**Pete T. TALON, Claimant–Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Respondent–Appellee.**

No. 93–7013.

United States Court of Appeals, Federal Circuit.

July 8, 1993.

Rehearing Denied Aug. 12, 1993.

Pete T. Talon, pro se.

Jeffrey J. Bernstein, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, submitted for respondent-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson, Deputy Director. Of counsel was Martha H. DeGraff, Dept. of Justice.

Before MAYER, Circuit Judge, COWEN, Senior Circuit Judge, and PLAGER, Circuit Judge.

COWEN, Senior Circuit Judge.

Mr. Talon, who appears *pro se*, appeals the decision of the United States Court of Veterans Appeals (CVA). The CVA determined that the Department of Veterans Affairs properly denied his application for non-service-connected pension benefits. The basis of the CVA's decision was that Mr. Talon's military service in the Commonwealth Army of the Philippines did not constitute active service for the purpose of establishing eligibility for United States Armed Forces pension benefits. We affirm.

## BACKGROUND

During World War II, Mr. Talon served with the Philippine Commonwealth Army. Pursuant to the Philippine Independence Act, Pub.L. No. 73–127, § 2(a)(12), 48 Stat. 456, 457 (1934), President Roosevelt issued a Military Order on July 26, 1941, in which he ordered into the service of the Armed Forces of the United States all the organized military forces of the Government of the Philippines. 6 Fed.Reg. 3825 (1941). In 1946, Congress passed legislation which provided that the military service covered by the President's order did not entitle the Philippine veterans to the rights, privileges, or benefits afforded veterans who served in the active military, naval, or air service. *See* 38 U.S.C. § 107(a) (1988).

On May 23, 1989, Mr. Talon filed a "Veterans Application for Compensation or Pension" with the Department of Veterans Affairs. Under the section which required the applicant to indicate the nature of the sickness, disease, or injury for which the claim is made, Mr. Talon inserted the words "over 65." At the time Mr. Talon filed his application, a veteran who had served in the active military, naval or air service of the United States for 90 days or more during a period of war and had attained the age of 65 years, was entitled to a non-service-connected disability pension. *See* 38 C.F.R. § 3.3(a)(2)(iv)(b) (1989).

On September 18, 1989, the Department of Veterans Affairs denied Mr. Talon's claim for the pension on the grounds that he was ineligible for such benefits. He appealed the denial to the Board of Veterans Appeals (Board). After the Board obtained a certification from the Department of Veterans Affairs stating that Mr. Talon served with the Philippine Commonwealth Army from January 1944 to May 1946, the Board ruled that in view of the provisions of Section 107(a), such service does not entitle him to the pension benefits he claimed.

Mr. Talon appealed the Board's decision to the CVA. On June 12, 1992, the CVA issued a memorandum decision in which it upheld the Board's finding that his only active service was with the Commonwealth Army of the Philippines, 2 Vet.App. 678. Relying on *Quiban v. Veterans Administration*, 928 F.2d 1154 (D.C.Cir.1991), the CVA concluded that 38 U.S.C. § 107(a) did not violate the Constitution and granted a motion for summary affirmance. On July 28, 1992, the CVA denied Mr. Talon's motion for panel review of the summary affirmance. *Talon v. Derwinski*, 3 Vet.App. 74 (1992) (Steinberg, J., dissenting). This appeal followed.

## DISCUSSION

■ Mr. Talon first challenges the factual determinations of the CVA regarding the nature and extent of his military service. He asserts that he was inducted into the United States Army on December 9, 1941, when he was driving to Tarlac, Philippines, to report for active duty; that he was given a furlough because of an injury, and that he last served the United States Army in the Philippines from January 1945 until May 15, 1946, when he was discharged by the United States Armed Forces of the Pacific Area Command. In enacting the Veterans Judicial Review Act, Congress limited this court's scope of judicial review over appeals from the CVA. In particular, this court may not review the factual determinations of the CVA. 38 U.S.C. § 7292(d)(1) (Supp. III 1991); *Livingston v. Derwinski*, 959 F.2d 224 (Fed.Cir. 1992). We accept the CVA's factual determinations and must therefore conclude that its

decision is in accordance with the applicable statute, 38 U.S.C. § 107(a), which provides:

> Service before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to the military order of the President ... shall not be deemed to have been active military, naval, or air service for the purposes of any law of the United States....

## II

■ As the second ground for reversing the CVA's decision, Mr. Talon argues that the provisions of Section 107(a), are unconstitutional in two respects. First, he relies primarily on President Roosevelt's Military Order of July 26, 1941, which was implemented by two orders of General MacArthur, and argues that where there is a conflict between President Roosevelt's "constitutional order" and Section 107(a), the "constitutional order" must prevail. The second part of Mr. Talon's constitutional challenge appears to be based upon the dissenting opinion of Associate Judge Steinberg in the CVA decision of July 28, 1992. As we understand his brief, Mr. Talon asserts that because he was a resident and citizen of the United States at the time he filed his application for the pension, the statutory provision violates his right to equal protection of the laws, which is guaranteed by the Due Process Clause of the Fifth Amendment.

We consider both arguments together, because both challenge the constitutionality of Section 107(a)—an issue which was decided in the comprehensive and well-considered decision of the U.S. Court of Appeals for the District of Columbia in *Quiban.* In that case, the appellate court reversed three similar decisions of a district court involving Philippine veterans of World War II, who were called into the service of the United States Army by President Roosevelt's order of August 26, 1941. The Veterans Administration had denied their applications for pensions because of the provisions of Section 107(a), but the district court held that the statute violated the equal protection component of the Due Process Clause of the Fifth Amendment.

Relying on the Supreme Court's decisions in *Califano v. Torres,* 435 U.S. 1, 98 S.Ct. 906, 55 L.Ed.2d 65 (1978) (per curiam), and *Harris v. Rosario,* 446 U.S. 651, 100 S.Ct. 1929, 64 L.Ed.2d 587 (1980) (per curiam), the court in *Quiban* determined that the proper standard of review is the rational basis test. Concluding that there was a rational basis for the statute and that it is constitutional, the court found that these three factors were dispositive: First, United States taxes have never been imposed in the Philippines, which has never contributed to the funding of United States veterans' benefits; Second, the government represented that the cost of extending full benefits to veterans of the Philippine Army would approach $2 billion annually for a substantial period of time; and Third, the extension of benefits to the Philippine veterans might seriously disrupt the economy of that country. *Quiban,* 928 F.2d at 1161.

In his dissent from the CVA's denial of the motion to review the summary dismissal, Judge Steinberg referred to the three-factor-rational-basis analysis employed in *Quiban* and stated that there may be no rational basis for applying Section 107(a) to a veteran of the Philippine service who is a current resident of the United States. He added that two of three controlling factors in *Quiban* were based upon economic concerns resulting from paying benefits to persons residing outside the United States. Because he thought the case might present a constitutional question which had not been decided by the CVA, he declared that a single-judge summary deposition of the case was not appropriate until it could be determined that Mr. Talon is not currently a United States resident.

After a careful reading of *Quiban,* we find nothing from which we would conclude that the court would have reached a different result if the applicants for pensions in that case had been residents of the United States. To the extent that the *Quiban* court considered whether the residence of an applicant is a controlling factor, the court's comment on the Supreme Court's decision in *Torres* indi-

cates that the decision would have been the same if the applicants had been residents of the United States. *Torres* involved the constitutionality of a 1972 amendment to the Social Security Act, known as the Supplemental Security Income Program, in which residents of Puerto Rico were excluded. Torres had received benefits under the program while he resided in Connecticut, but the benefits were discontinued when he moved to Puerto Rico. Torres filed a complaint in the district court, seeking to set aside the residency requirement on the ground that it violated the equal protection component of the Due Process Clause of the Fifth Amendment. *See Torres v. Mathews*, 426 F.Supp. 1106, 1107 (D.P.R.1977). The district court held that the act was unconstitutional, because it interfered with the constitutional right of citizens of the states and the District of Columbia to travel. In commenting upon the Supreme Court's decision in *Torres*, the court in *Quiban* stated:

> The district court in *Torres*, whose judgment the Supreme Court summarily reversed, had decided the case solely on a "right to travel" analysis. *See id.* at 3 & n. 4, 98 S.Ct. at 907 & n. 4. The Supreme Court's *Torres* opinion, however, suggested in a closing passage that the equal protection claim raised in the *Torres* complaint could not prevail, given the " 'strong presumption of constitutionality' " attending "law[s] providing for governmental payments of monetary benefits." *Id.* at 5, 98 S.Ct. at 908 (quoting *Mathews v. De Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976)).

928 F.2d at 1159.

Moreover, as we read the decision, *Quiban* does not hold that the validity of Section 107 hinges upon satisfaction of all three factors which were identified by the court as providing a rational basis for the disparate treatment of Philippine veterans. The fact that the estimated cost of extending full benefits to veterans of the Philippine Army would be $2 billion annually, is itself a sufficient basis upon which Congress could rationally exclude Philippine veterans from the pension benefits involved in this case. The Supreme Court has frequently declared that Congress has broad latitude in enacting legislation involving governmental payment of monetary benefits. When the legislation is challenged on equal protection grounds as being violative of the Fifth Amendment, the rational basis standard is the appropriate standard of judicial review. *See, e.g., United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 176, 101 S.Ct. 453, 460, 66 L.Ed.2d 368 (1980); *Califano*, 435 U.S. at 5, 98 S.Ct. at 908.

We agree with both the result and the rationale in *Quiban* and hold that it is dispositive of Mr. Talon's constitutional arguments.

## CONCLUSION

Although he has pleaded his case eloquently, Mr. Talon has not established that the denial of his application for a pension violated his constitutional rights, or that the decision below should be reversed on any other ground. Therefore, the decision of the CVA is

AFFIRMED.