**Max C. FLORENTINO, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–1025.

United States Court of Veterans Appeals.

Feb. 1, 1995.

Max C. Florentino, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Rudrendu Sinhamahapatra, Washington, DC, were on the brief, for appellee.

Before FARLEY, MANKIN and HOLDAWAY, Judges.

FARLEY, Judge:

This is an appeal from a July 30, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied the appellant's claim for compensation at the full dollar rate for his service-connected disabilities. Under 38 U.S.C. § 107(a), because the appellant served with Philippine forces during World War II, he is compensated "at a rate in pesos as is equivalent to $0.50 for each dollar authorized." The appellant contends that, since he is now a U.S. citizen, § 107(a) is unconstitutional as applied to him. The Court has jurisdiction to hear this appeal pursuant to 38 U.S.C. § 7252(a). For the following reasons, the Court will affirm the Board's decision.

## I.

The appellant performed recognized guerrilla service in the Philippines from January 4, 1945, until December 3, 1945, and served in the Philippine Army from December 4, 1945, until March 23, 1946. Record (R.) at 196. In August 1945, he suffered a gunshot wound to the right thigh. R. at 83, 229. On January 18, 1949, service connection was awarded for the injury to his right thigh and femur and for the shortening of his leg due to the gunshot wound, and a 50% rating was assigned; this was increased to 60% on March 24, 1953. Supplemental Record at 1–2. According to a December 16, 1991, Statement of the Case, the appellant "is receiving the maximum rate based on individual unemployability," although it is not noted when this rating was granted. R. at 247; *see also* R. at 258.

On August 26, 1991, the appellant filed a "STATEMENT IN SUPPORT OF CLAIM" with a VA

regional office (RO), in which he argued that he was entitled to disability compensation at the full dollar rate. R. at 234–37. This was answered by a letter stating that "[p]ayments of compensation to veterans who served with the [United States Armed Forces in the Far East] and recognized guerrillas are authorized at 0.50¢ [sic] for every dollar. Your monthly compensation rate . . . is correct." R. at 239. The appellant submitted a Notice of Disagreement on November 15, 1991. R. at 241–42. On July 30, 1993, the BVA issued a decision finding that the appellant's claim for compensation at the full dollar rate was not well grounded, and that it could not "adjudicate the constitutionality of congressional enactments as it is an administrative agency." *Maximo Florentino,* BVA 93–09641, at 3 (July 30, 1993) (citing *Johnson v. Robison,* 415 U.S. 361, 368, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974)).

## II.

The BVA decided that because § 107(a) clearly applied to the appellant, and because the constitutional matter "is not within the jurisdiction of the Board," the appellant's claim was not "well grounded." *Florentino,* BVA 93–09641, at 3. In *Sabonis v. Brown,* 6 Vet.App. 426, 430 (1994), this Court held that the use of the statutory term "well grounded" should be "confined to an evidentiary context" in our jurisprudence, unlike its use in other areas of law. *See* 38 U.S.C. § 5107(a). Thus, in this case, since "the law and not the evidence is dispositive, the . . . appeal to the BVA [should have been] terminated because of the absence of legal merit or the lack of entitlement under the law." *Sabonis,* 6 Vet.App. at 430 (citing FED. R.CIV.P. 12(b)(6)). However, this imprecision in the use of a term of art is not a basis, in and of itself, for a remand.

## III.

Section 107(a) of title 38 of the United States Code provides:

Service before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines, . . . including [service in] organized guerrilla forces under commanders appointed, designated, or subsequently recognized by the Commander in Chief, Southwest Pacific Area, or other competent authority in the Army of the United States, shall not be deemed to have been active military, naval, or air service for the purposes of any law of the United States conferring rights, privileges, or benefits upon any person by reason of the service of such person or the service of any other person in the Armed Forces, except benefits under—

. . . .

(3) chapters 11, 13 . . . and 23 of this title.

Payments under such chapters shall be made at a rate in pesos as is equivalent to $0.50 for each dollar authorized . . . .

This case presents the question of whether § 107(a) is constitutional as applied to the appellant, a Filipino veteran who is now a U.S. citizen. Having jurisdiction to review the July 30, 1993, BVA decision, this Court is empowered to interpret constitutional provisions "to the extent necessary to its decision and when presented." 38 U.S.C. § 7261(a)(1); *cf. In re Wick,* 40 F.3d 367 (Fed.Cir.1994); *Mayer v. Brown,* 37 F.3d 618 (Fed.Cir.1994).

It is well established that "[w]hen . . . legislation [involving governmental payment of monetary benefits] is challenged on equal protection grounds as being violative of the Fifth Amendment, the rational basis standard is the appropriate standard of judicial review." *Talon v. Brown,* 999 F.2d 514, 517 (Fed.Cir.) (citing *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 176, 101 S.Ct. 453, 460, 66 L.Ed.2d 368 (1980)), *cert. denied,* —— U.S. ——, 114 S.Ct. 643, 126 L.Ed.2d 601 (1993); *Califano v. Torres,* 435 U.S. 1, 5, 98 S.Ct. 906, 908, 55 L.Ed.2d 65 (1978); *Quiban v. Veterans Admin.,* 928 F.2d 1154, 1159–61 (D.C.Cir.1991). Section 107(a) has been held to be constitutional by the Court of Appeals for the District of Columbia Circuit, the Court of Appeals for the Federal Circuit, and by this Court. *Id.; Talon, supra; Dela Pena v. Derwinski,* 2 Vet.App. 80 (1992).

In *Quiban,* the District of Columbia Circuit articulated three factors which clearly provide a "rational basis" for the statute:

First, United States taxes have never been imposed in the Philippines; that community then, although once subject to United States rule, has never contributed to the funding of United States veterans benefits. Second, ... the government represented that "the costs of extending full veterans' benefits to veterans of the Philippine Army would approach $2 billion annually, for a substantial period of time." Brief for the Appellants at 22. Third, if inclusion of Puerto Ricans in the [Supplemental Security Income (SSI)] program "might seriously disrupt the Puerto Rican economy," *Torres*, 435 U.S. at 5 n. 7 [98 S.Ct. at 908 n. 7], ... the same could be said of extending the full range of United States veterans benefits to all Philippine veterans of World War II and to their families.

*Id.* at 1161 (footnote omitted); *see generally Harris v. Rosario*, 446 U.S. 651, 100 S.Ct. 1929, 64 L.Ed.2d 587 (1980) (holding that these same three factors provided a "rational basis" for limiting Aid to Families with Dependent Children benefits to Puerto Rican residents); *Torres, supra* (upholding Congress' denial of SSI benefits to Puerto Rican residents based on these three factors). In contrast with this case, however, all three veterans in *Quiban* were residents of the Philippines. 928 F.2d at 1161 n. 14.

In *Talon*, the United States Court of Appeals for the Federal Circuit considered whether § 107(a) was unconstitutional as applied to a Philippine veteran who subsequently had moved to the United States. The Federal Circuit held:

> After a careful reading of *Quiban*, we find nothing from which we would conclude that the court would have reached a different result if the applicants for pensions in that case had been residents of the United States....
>
> ... [A]s we read the decision, *Quiban* does not hold that the validity of Section 107 hinges upon satisfaction of all three factors which were identified by the court as providing a rational basis for the disparate treatment of Philippine veterans. The fact that the estimated cost of extending full benefits to veterans of the Philippine Army would be $2 billion annually, is

itself a sufficient basis upon which Congress could rationally exclude Philippine veterans from the pension benefits involved in this case.

999 F.2d at 516–17. We are unable to discern any principled basis for distinguishing a "resident" from a "citizen" of the United States in this context. The determinative issue is whether or not entitlement to benefits derives from service "in the organized military forces of the Government of the Commonwealth of the Philippines." 38 U.S.C. § 107(a). That the appellant is now a U.S. citizen and pays U.S. taxes is irrelevant to this statutory determination.

The factual setting of this appeal is slightly different from that in previous appeals in that they dealt with the exclusion of Filipino veterans from all benefits except those under chapters 11, 13, and 23 of title 38 (essentially, from all non-service-connected benefits); this case deals with the provision of § 107(a) that reduces by 50% the service-connected benefits paid to Filipino veterans. However, this distinction is of no consequence to a determination whether § 107(a) was constitutionally applied to this appellant. First, *Quiban* and *Talon* do not limit themselves to the particular facts of those cases. Second, the analysis and rationale of *Talon* are compelling and controlling. Even if the government were to increase only the benefits of those Filipino veterans who are service connected to the full dollar rate (and continue to deny non-service-connection benefits to Filipino veterans), the potential resulting additional expense would be more than enough to serve as a "rational basis" for the statute. We do not read the estimated annual $2 billion dollar cost referred to in *Talon* as a threshold for the determination of whether a rational basis exists for a statute that creates veterans' benefits. Thus, there is a rationale basis for § 107 as applied to the appellant, and therefore, the BVA decision must be affirmed.

## IV.

Upon consideration of the record, the appellant's informal brief, and the Secretary's brief, the Court holds that the appellant has not demonstrated that the Board committed either factual or legal error which would

warrant reversal or remand. *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990); *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). Accordingly, the July 30, 1993, decision of the Board of Veterans' Appeals is AFFIRMED.