Marie A. GIANCATERINO, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 93–830.

United States Court of Veterans Appeals.

May 3, 1995.

Frank R. Cergol, Lakewood, OH, was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Michael A. Leonard, Washington, DC, were on the brief, for ·appellee.

Before MANKIN, HOLDAWAY and IVERS, Judges.

IVERS, Judge:

Marie A. Giancaterino appeals an April 28, 1993, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to dependency and indemnity compensation (DIC) benefits. *Marie D. Giancaterino in the case of Mario D. Giancaterino,* BVA 93–08739 (Apr. 28, 1993). (We note that the appellant's name appears differently in the Notice of Appeal filed with this Court than in the caption of the BVA decision.) We have jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, we will affirm the April 1993 decision of the BVA.

## I. FACTUAL BACKGROUND

The facts in this appeal are not in dispute. Mario D. Giancaterino, the veteran, served on active duty in the United States Army from June 13, 1943, to December 9, 1945. Record (R.) at 12. The veteran's daughter, Marie Antoinette Giancaterino, the appellant in the instant appeal, was born on December 21, 1948. R. at 14. Effective September 2, 1964, a VA regional office (RO) found the veteran to be totally disabled based on individual unemployability. Supplemental (Suppl.) R. at 3. On November 7, 1966, the RO found the appellant had become incapable of self-support prior to her 18th birthday by reason of cerebral palsy, spastic quadriplegia, secondary to remote encephalitis. R. at 17. On February 14, 1967, the veteran died due to cardiac arrest. R. at 19. On March 22, 1967, the RO awarded service connection for the cause of the veteran's death. Suppl.R. at 5. Effective February 1, 1967, the RO awarded DIC benefits to the appellant under 38 U.S.C. § 1318. R. at 44; Suppl.R. at 7. The appellant was married on October 29, 1968. R. at 22. The appellant's DIC benefits were terminated effective October 1, 1968. R. at 26.

On May 22, 1991, the appellant sought reinstatement of her DIC benefits. R. at 28. On July 21, 1991, the RO informed the appellant that her claim for reinstatement was denied. R. at 31. On August 6, 1991, the Court of Common Pleas of Cuyahoga County in the State of Ohio entered judgment for dissolution of the marriage. R. at 33–34. Following receipt of the evidence of the final divorce decree, the RO continued the denial of reinstatement of DIC benefits on September 9, 1991. R. at 37. On April 28, 1993, the Board found that the appellant's claim for reinstatement of her DIC benefits was not well grounded. *Giancaterino,* BVA 93–08739, at 3–5.

## II. ANALYSIS

DIC benefits are payable to the surviving spouse, children, and parents of a veteran who died after December 31, 1956, from a service-connected or compensable disability. 38 U.S.C. § 1310. For DIC purposes, the term "child" means a person who is unmarried and (1) who is under 18 years of age, (2) who became permanently incapable of self-support before attaining 18 years of age, or (3) who is pursuing a course of instruction at an approved educational institution after attaining 18 years of age and until completion of education or training (but not after attaining 23 years of age). 38 U.S.C. § 101(4)(A). Thus, marriage renders the child of a veteran ineligible for DIC benefits.

Under 38 U.S.C. § 103(e), however,

The marriage of a child of a veteran shall not bar recognition of such child as the child of the veteran for benefit purposes if the marriage is void, or has been annulled by a court with basic authority to render annulment decrees unless the Secretary determines that the annulment was secured through fraud by either party or collusion.

Under the relevant statutes, then, the appellant is barred from reinstatement of the DIC benefits which were terminated by virtue of her marriage in October 1968 because the marriage eventually was dissolved by divorce, not by annulment.

The appellant challenges the constitutionality of 38 U.S.C. § 103(e). Although the appellant argues various reasons why the statutory provision in question should be found unconstitutional, her argument essentially is that 38 U.S.C. § 103(e) bars her (and others similarly situated) from obtaining a divorce and thus violates equal protection principles.

■ In its April 1993 decision, the Board recognized that the appellant's argument was constitutional in nature but indicated that it would leave adjudication in the first instance of the constitutional claim to this Court. *See Suttmann v. Brown,* 5 Vet.App. 127, 139 (1993) (when constitutional law claim is raised to Board, "Board is *free* to express an opinion on the appellant's constitutional claim") (emphasis added); *Saunders v. Brown,* 4 Vet.App. 320, 326 (1993) (" '[a]dministrative agencies are entitled to pass on constitutional claims but they are not required to do so' ") (quoting *Plaquemines Port v. Federal Maritime Comm'n,* 838 F.2d 536, 544 (D.C.Cir.1988)). Unlike *Saunders* and *Rosalinas v. Brown,* 5 Vet.App. 1, 2 (1993), there is no need for additional factual development in this instance. The facts are not in dispute, and the only issue is purely a constitutional claim, and this Court is empowered to make determinations regarding constitutional claims. 38 U.S.C. § 7261(a)(1), (a)(3)(B); *see Buzinski v. Brown,* 6 Vet.App. 360, 364–65 (1994). Therefore, we will ad-

dress the appellant's constitutional challenge to the statutory provision at issue.

■ While "[t]he Fifth Amendment ... does not [specifically] contain an equal protection clause as does the Fourteenth Amendment which applies only to the states[,] ... discrimination may be so unjustified as to be violative of due process." *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954); *see Latham v. Brown,* 4 Vet.App. 265, 266 (1993); *Disabled American Veterans v. United States Department of Veterans Affairs,* 962 F.2d 136, 141 (2d Cir.1992). In determining whether there has been a violation of due process, the United States Supreme Court applies the same standards to the Federal Government that it applies to the states under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *See, e.g., Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Saunders,* 4 Vet.App. at 325; *Latham,* 4 Vet.App. at 266.

### A. Level of Scrutiny

Initially, the Court must determine what particular level of review or scrutiny it must apply to the classification at issue. The Court "must first determine what burden of justification the classification created thereby must meet, by looking to the nature of the classification and the individual interests affected." *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 253, 94 S.Ct. 1076, 1080, 39 L.Ed.2d 306 (1974).

■ Unless a classification is suspect, such as where it is predicated on race or alienage, or where it involves a fundamental right, such as voting, a government action being challenged need meet only the rational basis test. *See Nordlinger v. Hahn,* 505 U.S. 1, ——, 112 S.Ct. 2326, 2331–32, 120 L.Ed.2d 1 (1992); *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973); *Hrvatin v. Principi,* 3 Vet.App. 426, 429 (1992); *see also*

*Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971).

■ Although the appellant argues that the statute at issue interferes with the right to marry and with the legitimacy of children, her argument is actually that 38 U.S.C. § 103(e) interferes with the ability of individuals to obtain a divorce. *See also Bierer v. Brown,* 6 Vet.App. 563, 564 (1994) (despite appellant's argument that claim involved right of privacy, Court held "that the only constitutional protection reasonably at issue" involved freedom of religion); *cf.* 4 AM.JUR.2D *Annulment of Marriage* § 104 (1962) (many states provide for legitimacy of children when marriage is annulled). The Supreme Court has clearly recognized that the right to marry is a fundamental right and that its infringement is subject to strict scrutiny by a reviewing court. *Zablocki v. Redhail,* 434 U.S. 374, 383–86, 98 S.Ct. 673, 679–81, 54 L.Ed.2d 618 (1978); *Boddie v. Connecticut,* 401 U.S. 371, 376, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971); *Loving v. Virginia,* 388 U.S. 1, 11–12, 87 S.Ct. 1817, 1823–24, 18 L.Ed.2d 1010 (1967).

In *Boddie,* the Supreme Court also indicated that laws denying access to the courts for individuals seeking divorce would be subject to the same level of strict scrutiny. *Id.* at 380–81, 91 S.Ct. at 787–88. Indeed, the Supreme Court indicated that divorce is an "adjustment of a *fundamental* human relationship." *Id.* at 383, 91 S.Ct. at 788 (emphasis added). As characterized by the Supreme Court in a later case,

> The denial of access to the judicial forum in *Boddie* touched directly ... on the marital relationship and on the associational interests that surround the establishment and dissolution of that relationship. On many occasions we have recognized the fundamental importance of these interests under our Constitution. [Citations omitted.] The *Boddie* appellants' inability to dissolve their marriages seriously impaired their freedom to pursue other protected associational activities.

*United States v. Kras,* 409 U.S. 434, 444–45, 93 S.Ct. 631, 637, 34 L.Ed.2d 626 (1973). It

must be noted, however, that there is an ongoing debate as to the extent of the nature of the right to divorce, and it is uncertain whether or not the right to a divorce is to be accorded the same "fundamental right" treatment as the right to marry. *See Murillo v. Bambrick,* 681 F.2d 898, 902–03 (3d Cir. 1982); *cf. Lynk v. LaPorte Superior Court No. 2,* 789 F.2d 554, 566–67 (7th Cir.1986) (although distinction between whether divorce is fundamental or incidental right might have been important if claim had involved violation of Equal Protection Clause, in context of case, Court noted debate surrounding nature of right to divorce).

■ Nevertheless, whether the appellant's argument is cast in terms of marriage or divorce and whether the right to a divorce is perceived as fundamental or incidental, the Court is not required to review the particular statute at issue in this appeal under the heightened level of scrutiny. In *Zablocki,* the Supreme Court stated:

> By reaffirming the fundamental right character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, *reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed.*

*Id.* at 386, 98 S.Ct. at 681 (emphasis added). In *Califano v. Jobst,* 434 U.S. 47, 58, 98 S.Ct. 95, 101–02, 54 L.Ed.2d 228 (1977), the Supreme Court sustained against equal protection challenge sections of the Social Security Act providing for termination of a dependent child's benefits upon marriage to an individual not entitled to benefits under the Act. In *Zablocki,* the Supreme Court characterized the effect of the Social Security Act provisions at issue in *Jobst* as follows:

> The Social Security provisions placed no direct legal obstacle in the path of persons desiring to get married, and ... there was no evidence that the laws significantly discouraged, let alone made "practically im-

possible," any marriages. Indeed, the provisions had not deterred the individual who challenged the statute from getting married, even though he and his wife were both disabled.

*Zablocki*, 434 U.S. at 387, n. 12, 98 S.Ct. at 681, n. 12 (citations omitted). In *Murillo*, the United States Court of Appeals for the Third Circuit held that the statute at issue there "did not 'significantly,' 'directly,' or 'substantially' infringe upon the right of individuals to obtain dissolutions of their marriages." *Id.*, 681 F.2d at 903 (quoting *Zablocki*, 434 U.S. at 386–87, 98 S.Ct. at 681); *see also Parsons v. County of Del Norte*, 728 F.2d 1234, 1237 (9th Cir.1984) (where right to marry or to remain married was not threatened or unduly burdened by no-nepotism rule, court applied rational basis test instead of strict scrutiny).

Similarly in this case, 38 U.S.C. § 103(e) does not "significantly," "directly," or "substantially" infringe upon the rights of individuals seeking a divorce. The statute does not bar divorces or otherwise restrict access to courts authorized to grant divorces.

■ Therefore, the appropriate standard of review of the appellant's constitutional challenge is the rational basis test. *See Murillo*, 681 F.2d at 905. The rational basis test requires "that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives." *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981); *see Mathews v. de Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976); *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970); *Latham*, 4 Vet.App. at 267; *see also Cleland v. National College of Business*, 435 U.S. 213, 221, 98 S.Ct. 1024, 1029, 55 L.Ed.2d 225 (1978) (per curiam) (Congress has broad power to make decisions concerning how veterans benefits should be administered). This test is a relatively deferential one. In *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), the Supreme Court stated: "A statutory discrim-

ination will not be set aside if any state of facts reasonably may be conceived to justify it." Furthermore, in *Hodel v. Indiana*, 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2386–87, 69 L.Ed.2d 40 (1981), the Supreme Court stated: "Social and economic legislation [that] does not employ suspect classifications or impinge on fundamental rights ... carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality."

### B. Scrutiny of Statute at Issue

In this case, the statute at issue has undergone several revisions. Section 103(e) was added to title 38 of the United States Code in 1962 by Pub.L. No. 87–674, § 2, 76 Stat. 558 (1962). At that time, section 103(e) was substantially similar to the current version, providing that

[t]he marriage of a child of a veteran shall not bar recognition of such child as the child of the veteran for benefit purposes if the marriage is void, or has been annulled by a court with basic authority to render annulment decrees unless [VA] determines that the annulment was secured through fraud by either party or collusion.

In 1974, Congress amended section 103(e) by adding a paragraph (2), providing that

[t]he marriage of a child of a veteran shall not bar recognition of such child as the child of the veteran for benefit purposes if the marriage has been terminated by death or has been dissolved by a court with basic authority to render divorce decrees unless [VA] determines that the divorce was secured through fraud by either party or collusion.

Veterans and Survivors Pension Adjustment Act of 1974, Pub.L. No. 93–527, § 9(a), 88 Stat. 1702, 1705 (1974). Thus, the 1974 amendment broadened the circumstances under which the child of a veteran could seek reinstatement of benefits following the termination of a marriage. As a result of the 1974 amendment, such a child could seek reinstatement if the marriage had been terminat-

ed by annulment, divorce, or death. The legislative history indicates that the amendment was enacted in order to bring treatment of the children of a veteran in line with the treatment of veterans' surviving spouses. *See* H.R.REP.No. 1499, 93d Cong., 2d Sess. 15 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6516, 6528.

In 1990, Congress again amended section 103(e) by eliminating paragraph (2). Omnibus Budget Reconciliation Act of 1990 (OBRA), Pub.L. No. 101–508, § 8004(a)(2), 104 Stat. 1388, 1388–343 (1990). In addition, the amendment was to apply only to claims filed after October 31, 1990, and was not to operate so as to reduce or terminate benefits to any individual whose benefits were predicated on, inter alia, section 103(e)(2) before the date of that amendment. OBRA § 8004(b), 104 Stat. at 1388–343. The effect of this change was to restore the treatment of veterans' children whose marriages have been terminated to the treatment accorded them prior to 1974. Consequently, the marriage of a child of a veteran would not bar benefits to such child if the marriage were annulled. If the marriage were terminated by death or divorce, however, DIC benefits would be denied. In this case, the appellant first filed a claim for reinstatement of the DIC benefits after October 31, 1990, and her claim therefore falls within the ambit of the amended version of 38 U.S.C. § 103(e).

In 1991, Congress amended the statute again to provide that section 8004 of the OBRA would not "apply with respect to any individual who on October 31, 1990, was a surviving spouse or child within the meaning of title 38, United States Code, unless after that date that individual (1) marries...." Veterans' Benefits Programs Improvement Act of 1991, Pub.L. No. 102–86, § 502, 105 Stat. 414, 424 (1991) (found at 38 U.S.C. § 103 note). Since the appellant was not a child of the veteran within the meaning of title 38 on October 31, 1990, by virtue of her marriage (which was dissolved in 1991), this amendment does not apply to the appellant.

In enacting the amendments to section 103(e) in 1990 as part of the OBRA, Congress did not explicitly provide a rationale. Nevertheless, the lack of an explicit rationale in the legislative history is not dispositive. *See United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461–62, 66 L.Ed.2d 368 (1980) (court's inquiry ends where there are plausible reasons for Congressional action, and legislative body is not required to articulate its reasons for enacting statute); *Brandwein v. California Board of Osteopathic Examiners*, 708 F.2d 1466, 1471 (9th Cir.1983) (same).

In defense of the 1990 amendment, the Secretary argues that Congress passed section 8004 of the OBRA because of budgetary considerations. This argument is supported by language in the legislative history that the amendment regarding married children, in conjunction with a similar amendment regarding remarried surviving spouses, would generate savings of $19 million in outlays in Fiscal Year 1991 and $374 million in outlays in Fiscal Years 1991 to 1995. *See* H.R.CONF.REP. 101–964, 101st Cong., 2d Sess. 984 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2017, 2374, 2689.

The Secretary also argues that it was reasonable for Congress to conclude that a veteran's children who are divorced would be in a better financial position than those children whose marriages are voided by annulment because of the availability of spousal support as a condition of a divorce. *See generally* 4 AM.JUR.2D *Annulment of Marriage* § 102 (1962); 55 C.J.S. *Marriage* § 63 (1948). The United States Court of Appeals for the Federal Circuit recently noted that budgetary considerations standing alone were a sufficient reason for Congress to exclude Filipino veterans from certain pension benefits. *Talon v. Brown*, 999 F.2d 514, 517 (1993); *see Disabled American Veterans*, 962 F.2d at 143 ("[S]teps to control the budget deficit, however modest in degree, nonetheless are legitimate, and perhaps necessary, objectives of the Congress and the President.") (citing *Lyng v. Automobile Workers*, 485 U.S. 360, 373, 108 S.Ct. 1184, 1193–94, 99 L.Ed.2d 380 (1988), and *Ohio Bureau of Employment*

*Services v. Hodory,* 431 U.S. 471, 493, 97 S.Ct. 1898, 1910, 52 L.Ed.2d 513 (1977)); *Oliver v. Ledbetter,* 821 F.2d 1507, 1515 (11th Cir.1987) (Social Security Act provision was rationally related to legislative goal of distributing limited welfare funds to neediest families). Nevertheless, budgetary considerations coupled with the rationale that marriages terminated by divorce or death pose less of a financial burden than marriages terminated by annulment allow us to hold that 38 U.S.C. § 103(e) is rationally related to legitimate governmental interests.

### C. Remedy

In its April 1993 decision, the Board found that the appellant's claim for reinstatement of her DIC benefits was not well grounded. *Giancaterino,* BVA 93–08739, at 3–5. In *Sabonis v. Brown,* 6 Vet.App. 426, 430 (1994), the Court held that the use of the statutory term "well grounded" should be "confined to an evidentiary context" in our jurisprudence, unlike its use in other areas of law. *See* 38 U.S.C. § 5107(a). Thus, in this case, since "the law and not the evidence is dispositive, the ... appeal to the BVA [should have been] terminated because of the absence of legal merit or the lack of entitlement under the law." *Sabonis,* 6 Vet.App. at 430 (citing FED.R.CIV.P. 12(b)(6)). "However, this imprecision in the use of a term of art is not a basis, in and of itself, for a remand." *Florentino v. Brown,* 7 Vet.App. 369, 370 (1995). Therefore, we will not remand to the Board for the issuance of a new decision.

### III. CONCLUSION

Accordingly, the Court AFFIRMS the BVA's April 1993 decision.