# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-695

Coronacio C. Lariosa, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

Before KRAMER, *Chief Judge*, and FARLEY and HOLDAWAY*, Judges*.

# O R D E R

The appellant, Coronacio C. Lariosa, appeals from a December 15, 2000, Board of Veterans' Appeals (Board or BVA) decision that declined to reopen her claim for service connection for the cause of the veteran's death. The issue currently before this Court is whether the appellant's notice of appeal (NOA) was timely filed.

The appellant is the widow of deceased veteran, Raymundo C. Lariosa. On January 31, 2001, the Court received a letter dated January 15, 2001, from the appellant. Aside from bearing the addresses, a signature block, the deceased veteran's name, and claims file number, the letter consisted of only two sentences:

> Respectfully request the Honorable CVA [U.S. Court of Appeals for Veterans Claims] Office, to please furnish me the following documents: a.) Appeal Form; b.) Motion for the non-payment of cost. Lastly, I hope my herein request be granted, I am.

The Court sent the requested information on February 1, 2001. The Court received the appellant's NOA on April 19, 2001.

On May 1, 2001, the Secretary filed a motion to dismiss, asserting that the appellant had filed an untimely NOA. Acting for the Court, the Clerk of the Court on May 8, 2001, ordered the appellant to show cause why this appeal should not be dismissed for lack of jurisdiction. The appellant did not file a response. On July 10, 2001, the Clerk granted the Secretary's motion and dismissed the appeal. However, in an order dated July 27, 2001, the Clerk revoked the July 10, 2001, order, noting that the file contained correspondence that arguably could be construed as a timely NOA. A copy of the correspondence was served on the Secretary who was given 20 days to file an addendum to his motion to dismiss. On August 14, 2001, the Secretary filed an addendum arguing that (1) the January 15, 2001, letter was not a valid NOA under the Court's caselaw or the

Court's rules; (2) the appellant did not file her NOA until April 19, 2001; and (3) the Court's July 10, 2001, order dismissing this case for lack of jurisdiction was correctly issued.

In an August 30, 2001, single-judge order, the Court dismissed the appeal for lack of jurisdiction. After determining that the April 19, 2001, NOA had not been filed "within the 120-day window," the Court also found that the appellant's January 15, 2001, letter

> fails to show the requisite intent to appeal the BVA decision as is required of a valid NOA. *See Perez v. Brown*, 9 Vet.App. 452 (1996) (veteran's letter to Court held not to constitute valid NOA because it failed to show intent to appeal BVA decision); *Calma v. Brown*, 9 Vet.App. 11 (1996) (NOA must contain a clear intent to seek Court review); *see also* U.S. VET. APP. R. 3(c) (specifying content requirements for NOA). To the contrary, the letter shows an intent to file an NOA in the future, evidenced by the appellant's request that she be furnished with the form needed to file an appeal. Accordingly, the January 15, 2001, letter does not constitute a valid jurisdiction-conferring NOA. *See* 38 U.S.C. § 7266(a).

*Lariosa v. Principi*, No. 01-965 at 2 (Aug. 30, 2001) (single-judge order).

On November 29, 2001, the appellant, having obtained counsel, filed a motion for reconsideration of the Court's dismissal order and for leave to file a response to the Secretary's addendum to his motion to dismiss. The Court construed the appellant's motion as a timely motion for reconsideration, granted reconsideration, and revoked the August 30, 2001, order. The Court then ordered the appellant to file a response to the Secretary's motion and addendum.

In her March 19, 2002, response, the appellant did not argue that her January 15, 2001, letter requesting forms constituted an NOA. Rather, focusing solely upon the actual NOA received on April 19, 2001, she argued that, as a foreign resident, she had acted with extraordinary diligence in attempting to submit her NOA within the 120-day time limit and that the filing period should be equitably tolled. She also argued that her diligence should not be expected, as a matter of law, to include control of a national postal service and that the Secretary's interpretation of 38 U.S.C. § 7266, as excluding foreign government postal agency postmarks, is demonstrably "inconsistent with statutory mandate" and "frustrates the policy" that Congress sought to implement. The appellant urges that the clear Congressional intent in imposing a "mailbox rule" was for all appellants, regardless of geographic location, to be placed on the same footing regarding NOA filing. The appellant suggests that the Court reject the Secretary's statutory construction or, in the alternative, the statute itself because it denies the appellant equal protection of the law as guaranteed by the Fifth Amendment of the United States Constitution.

I.

As evidenced by her subsequent submission of the NOA received by the Court on April 19, 2002, the appellant did not consider her January 15, 2001, letter to be a jurisdiction-conferring NOA; nor does she advance that argument now. Nevertheless, we will address that issue because the dissent expresses the view that the January 15, 2001, letter should be "treated" as an NOA,

2

purporting to find support mainly in *Calma v. Brown*, 9 Vet.App. 11 (1996) and *Losh v. Brown*, 6 Vet.App. 87 (1993). Those cases, however, cannot bear the weight the dissent seeks to place upon them and we conclude that the January 15, 2001, letter is not, and cannot be construed to be, a jurisdiction-conferring NOA.

Rule 3(c) of this Court's Rules of Practice and Procedure (the Court Rules) provides as follows:

> (c) Content. The [NOA] shall:
> (1) name the party or parties taking the appeal;
> (2) designate the Board decision appealed from; and
> (3) include the addresses of the appellant(s) and of any representative.
> Form 1 in the Appendix of Forms is a suggested form of [NOA]. An appeal
> will not be dismissed for informality of the [NOA].

U.S. VET. APP. R. 3(c). While the appellant's January 15, 2001, letter, does contain some of the information required by Rule 3(c), by its terms it is simply a clerical request for the forms necessary to file an appeal at some time in the future. The appellant's expressed "hope" is that her request "*herein* be granted", i.e., that the forms be sent to her. (Emphasis added.) The letter does not contain the requisite designation of "the Board decision appealed from." *See* U.S. VET. APP. R. 3(c); *see also Perez*, 9 Vet.App. at 454. Nor does it to show the intent to appeal the BVA decision as is required of a valid NOA. *See id.* at 455-56 (veteran's letter to Court held not to constitute valid NOA because it failed to show intent to appeal BVA decision); *Calma v. Brown*, *supra* (holding that NOA must contain a clear intent to seek Court review). To the contrary, one can infer from the appellant's request for forms only that she might file an appeal; there is nothing to suggest that the appellant intended that the January 15, 2001, letter initiate an appeal which is what our jurisprudence requires.

In *Losh, supra,* the Court did, as the dissent states, apply a "liberal rule of construction" to hold that an NOA that only indicated the date of the BVA's denial of reconsideration "was applicable to both the denial of the motion for reconsideration and the underlying decision." *Losh*, 6 Vet.App. at 90. However, before the Court can apply the rule of liberal construction, there must be something to construe and, unlike *Losh*, the instant case offers nothing to construe in the January 15, 2001, letter. To hold that the January 15, 2001, letter constitutes an NOA would require us not to construe but to create and this we cannot do. Accordingly, we hold that the January 15, 2001, letter does not constitute a valid jurisdiction-conferring NOA. *See* 38 U.S.C. § 7266(a).

II.

Turning to the NOA received by the Court on April 19, 2001, and the appellant's arguments, the ultimate burden of establishing jurisdiction rests with the appellant. *See McNutt v. G.M.A.C.*, 298 U.S. 178 (1936); *Bethea v. Derwinski*, 2 Vet.App. 252, 255 (1992). "In order to obtain review by [this Court] of a final decision of the [BVA], a person adversely affected by such decision shall file [an NOA] with the Court within 120 days after the date on which notice is mailed." 38 U.S.C. § 7266(a). *See Leonard v. West*, 12 Vet.App. 554, 555 (1999 ); *see also* U.S. VET. APP. R. 4. Congress has adopted a postmark rule only as to a postmark affixed by the United States Postal

Service (USPS).  *See* 38 U.S.C. § 7266(c) and (d), as redesignated by subsections (b)(3) and (b)(4), respectively, of section 507 of the Veterans Education and Benefits Expansion Act of 2001, Pub. L. No. 107-103, 115 Stat. 976, 997 (2001) (providing that NOA, if properly addressed to the Court, will be deemed received on date of USPS postmark on envelope in which NOA was mailed if such postmark is legible).  Rule 4(a) of the Court's Rules reads that an NOA shall be deemed received

> (1) on the date of its legible postmark, affixed by the United States Postal Service . . . on the cover in which the Notice is posted, if the mailing is properly addressed to the Court and is mailed; or, (2) on the date of its receipt by the Clerk, *if it does not bear a legible postmark affixed by the United States Postal Service,* or it is delivered or sent by a means other than United States mail.

U.S. VET. APP. R. 4(a)(1), (2) (emphasis added).

The appellant argues that the 120-day filing deadline should be equitably tolled because she acted with extraordinary diligence in attempting to submit her NOA in a timely manner.  The seminal case on equitable tolling is *Bailey v. West*, 160 F.3d 1360 (Fed. Cir. 1998).  This Court has interpreted *Bailey* to allow equitable tolling when the appellant has "been misled or induced by VA conduct 'into allowing the filing deadline to pass.'" *Chastain v. West*, 13 Vet.App. 296, 299 (2000).  "There must be cause and effect; that is, the appellant must have relied to his detriment on something that VA did (or should have [done] but did not do)." *Id.*  *See Bailey*, 160 F.3d at 1365 (noting that veteran had accepted and relied on VA advice and was misled by that advice "into allowing filing deadline to pass").  There is no assertion in this case that VA misled or induced the appellant into filing her NOA after the 120-day deadline, and residence in a foreign country has never been recognized as a basis for the equitable tolling of a Congressionally-imposed filing deadline.  Accordingly, the Court concludes that there is no basis in this record for the tolling of the 120-day appeal period mandated by 38 U.S.C. § 7266(a).

The appellant next urges the Court to reject the interpretation that 38 U.S.C. § 7266 is limited to postmarks by the USPS, or, in the alternative, to reject the statute itself, as a violation of the Equal Protection Clause of the 14th amendment to the U.S. Constitution. Where the intent of Congress on a particular question is clear, courts "must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 842-43 (1984).  To determine Congress' intent, the traditional tools of statutory construction are employed, beginning with the text of the statute itself. *See id.* at 843 n.9; *see also United States v. Gonzales,* 520 U.S. 1, 4 (1997) ("Our analysis begins, as always, with the statutory text.").  A statute is construed, if at all possible, to give effect and meaning to all its terms. *See Lowe v. SEC,* 472 U.S. 181, 207-08 n.53 (1985); *Montclair v. Ramsdell,* 107 U.S. 147, 152 (1883) ("It is the duty of the court to give effect, if possible, to every clause and word of a statute . . . .")  Only where a statute's plain meaning leads to an absurd result that Congress clearly never could have intended is this "plain meaning rule" abandoned for a review of the applicable legislative history and statutory construction. *See Gardner v. Derwinski*, 1 Vet.App. 584, 587-88 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994).

4

The pertinent part of the 38 U.S.C. § 7266 reads:

(3) [An NOA] shall be deemed to be received by the Court as follows:
    (A) On the date of receipt by the Court, if the notice is delivered.
    (B) On the date of the *United States Postal Service postmark* stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed.
(4) For a notice of appeal mailed to the Court to be deemed to be received under paragraph (3)(B) on a particular date, the *United States Postal Service postmark* on the cover in which the notice is posted must be legible. The Court shall determine the legibility of any such postmark and the Court's determination as to legibility shall be final and not subject to review by any other Court.

38 U.S.C. § 7266(3), (4) (emphasis added).

The statutory language is unambiguous: the words "United States Postal Service postmark" in the plain text of the statute leaves little room for judicial interpretation. Indeed, it is difficult to imagine an interpretation of section 7266 that would suggest otherwise without completely reading the words "United States Postal Service postmark" out of the statute. The Court's Rules, and its caselaw, dictate that the postmark date will be deemed the date of receipt only when "affixed by the United States Postal Service." *See* U.S. VET. APP. R. 4(a); *Lanao v. Brown,* 8 Vet. App. 361 (1995) (per curiam order) (NOA bearing Philippine postmark not entitled to statutory mailbox rule). Although unnecessary, in view of the substance of the appellant's argument, the Court notes that the plain text of the statute is also consistent with the legislative history. Contrary to the appellant's assertion that "[t]here is not a word in the legislative history to suggest that Congress intended to disregard the postmarks of official postal service of foreign nations, . . ." (Response at 10) both the floor debate and the Senate Committee Report expressly state that "*only* legible U.S. Postal Service postmarks would be sufficient." *See* 140 CONG. REC. S15,007 (daily ed. Oct. 8, 1994) (statement of Sen. Rockefeller, floor manager); S. REP. NO. 103-232, at 6-7 (1994) (emphasis added). To adopt the appellant's argument would render the statute's plain text meaningless, would be contrary to the legislative history, and would create the very "absurd result" the rules of statutory construction are designed to avoid.

The appellant's equal protection argument likewise fails. As the Court stated in *Reeves v. West*, 11 Vet.App. 255 (1998), "[w]hen analyzing an equal protection claim, the Court 'must first determine what burden of justification the classification created thereby must meet, by looking to the nature of the classification and the individual interests affected.'" *Reeves,* 11 Vet.App. at 258 (quoting *Giancaterino v. Brown*, 7 Vet.App. 555 (1995) (quoting *Mem'l Hosp. v. Maricopa County*, 415 U.S. 250, 253 (1974))). In the instant case, there is no suspect class because there is no classification predicated on race or alienage; nor is there a fundamental right alleged or involved. *See Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992); *Robinson v. Brown*, 9 Vet.App. 398 (1996); *Latham v. Brown,* 4 Vet.App. 265 (1993). Nor does the appellant allege or submit proof that Congress was motivated by any discriminatory purpose in creating the limitation. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977). Consequently, the proper standard of review is

the "rational basis" test, under which the statute withstands constitutional scrutiny on equal protection grounds unless the statute is "patently arbitrary and irrational" and not reasonably related to any proper congressional purpose. *United States R.R. Ret. Bd. v. Fritz,* 449 U.S. 166, 177 (1980).

Congress' decision to limit the postmark rule to a USPS postmark is not arbitrary or irrational. Congress is familiar with the USPS and deemed its postmark a reliable method to determine the date of mailing. It is reasonable for Congress not to include foreign postmarks because it could not be expected to be familiar with, and would have no control over, the vagaries of how other countries affix their postmarks or the reliability of their postal systems. This is just one of many possible examples of a rational basis that would survive an equal protection challenge. When there are "plausible reasons" for Congress to enact such a limitation, whether or not such a basis was actually expressly articulated by Congress in some fashion, this Court's scrutiny under the rational basis test "is at an end." *Fritz*, 449 U.S. at 179. Based on the above analysis, the Court concludes that there is a rational basis for the statute and finds the statute constitutional. *See also Quiban v. Veterans Admin.,* 928 F.2d 1154 (D.C. Cir. 1991) (applying rational basis test in rejecting equal protection challenge to 38 U.S.C. § 107(a), which provided that certain service in the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States would not be deemed to have been active military for the purposes of any law of the United States); *Talon v. Brown*, 999 F.2d 514 (Fed. Cir. 1993), *cert. denied*, 510 U.S. 1028 (1993); *Reeves, supra*; *Florentino v. Brown*, 7 Vet.App. 369 (1995).

III.

The appellant's NOA was received by the Court on April 19, 2001. Because the NOA does not bear a USPS postmark, the postmark rule of section 7266 does not apply; thus, the NOA is deemed to be received on the date it was actually received by the Court. U.S. Vet. App. R. 4(a)(2). There is otherwise nothing in this appeal to suggest that tolling of the 120-day appeal period would be appropriate. *See Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89 (1990); *Bailey, supra.* Because the appellant's NOA was received by the Court more than 120 days after the Board decision being appealed, the NOA is untimely and the Court is without jurisdiction to review this appeal.

Upon consideration of the foregoing, it is

ORDERED that the Secretary's motion is granted and this appeal is DISMISSED for lack of jurisdiction.

DATED:      September 17, 2002                          PER CURIAM.

KRAMER, *Chief Judge*, dissenting: I agree with the majority's analysis with respect to the statutory interpretation of the postmark rule under 38 U.S.C. § 7266. Notwithstanding, I believe that the Court should not reach that issue because the then pro se appellant's January 15, 2001, letter that was received by the Court on January 31, 2001 (January 2001 letter), which the majority addresses and concludes is not a valid Notice of Appeal (NOA), should be treated as a jurisdiction-conferring NOA. In this regard, although it appears that the appellant in an earlier pleading before the Court

may have raised the argument that the January 2001 letter is a valid NOA but does not raise it in her most current pleading, I further believe that the Court has an obligation to examine its jurisdiction from the inception of the appeal and consider all of the parties' pertinent pleadings before the Court. *See* Appellant's November 29, 2001, Motion for Reconsideration of the Court's Order Dismissing [Her] Appeal and For Leave to Respond at 2-3; *see generally* Appellant's March 19, 2002, Response to the Secretary's Motion to Dismiss.

Pursuant to 38 U.S.C. § 7266(a), in order for a claimant to obtain review of a Board of Veterans' Appeals (Board or BVA) decision by this Court, that decision must be final and the person adversely affected by that decision must file a timely NOA with the Court. *See Bailey v. West*, 160 F.3d 1360, 1363 (Fed. Cir. 1998) (en banc). To have been timely filed under 38 U.S.C. § 7266 and Rule 4 of this Court's Rules of Practice and Procedure (Rules), an NOA generally must have been received (or, in certain circumstances, be deemed so received) by the Court within 120 days after notice of the underlying final BVA decision was mailed. *See* 38 U.S.C. § 7266(a); *Cintron v. West*, 13 Vet.App. 251, 254 (1999). *But see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Evans v. West*, 12 Vet.App. 396, 399 (1999) (citing *Bailey,* 160 F.3d at 1365, and other cases regarding equitable tolling of NOA-filing period under certain circumstances). Further, Rule 3(c) requires that an NOA include the name of the party taking the appeal and his or her address (and the address of a representative, if any) and that the NOA designate the BVA decision being appealed. U.S. VET. APP. R. 3(c). Traditionally, in determining whether a pro se appellant has filed a valid NOA, the Court has applied a liberal rule of construction. *See Calma v. Brown*, 9 Vet.App. 11, 15 (1996); *Losh v. Brown*, 6 Vet.App. 87, 90 (1993) ("Court has traditionally adopted a liberal rule of construction as to what constitutes a valid NOA"); U.S. VET. APP. R. 45(j) ("Clerk [of the Court] shall liberally construe the rules as they apply to appellants representing themselves"). Moreover, in *Calma*, this Court held that "an NOA need not contain a literal statement that a BVA decision is being appealed to the Court, as long as the intent to seek Court review is clear from the document as a whole and the circumstances of its filing with the Court." *Calma*, *supra*; *cf. Perez v. Brown,* 9 Vet.App. 452, 455-56 (1996) (Court not prepared to hold "that any communication addressed to the Court referring to a claim for VA benefits would be an NOA as to a BVA decision within the meaning of [§ 7266(a)]").

Here, the BVA sent to the appellant notice of its decision on December 15, 2000. The BVA attached to that notice a notice of appellate rights that contained the following information:

> A[n NOA] must be filed with the Court within 120 days from the date of mailing of the notice of the BVA's decision. . . . You may obtain information about the form of the [NOA], the procedure by which you may file your [NOA] with the Court, the filing fee, and other matters covered by the Court's [R]ules directly from the Court.

*Coronacio[] C. Lariosa*, BVA 99-19184, at 10 (Dec. 15, 2000). As the majority points out, in the January 2001 letter, the appellant requested, inter alia, an "[a]ppeal [f]orm." *Ante* at 1, slip op. at 1. Moreover, the January 2001 letter included the statement that "I hope my herein request be granted . . ." and it included her name, her address, her claims file number, her husband's (the veteran's) name, and her signature. *Id.*; *see generally* Appellant's March 19, 2002, Response to the Secretary's

7

Motion to Dismiss, Exhibit 1. On February 1, 2001, the Court sent to the appellant the requested information and, thereafter, the Court received on April 19, 2001, the appellant's completed NOA form, which was signed by the appellant and dated March 26, 2001.

Initially, I note that the Court received the appellant's January 2001 letter well within the 120-day judicial-appeal period. That letter explicitly satisfies all but one of NOA content requirements of Rule 3(c). However, although that letter does not designate explicitly the BVA decision appealed from, it does include the appellant's VA claims file number. *See Calma*, 9 Vet.App. at 16 (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962), for proposition that requirements of rules of procedure should be liberally construed and mere technicalities should not prevent court's consideration on merits); *see also Becker v. Montgomery*, 532 U.S. 757, 767-68 (2001) ("[I]mperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court.").

Moreover, even if it is arguable whether the content of the January 2001 letter alone reflected the appellant's intent to appeal, under *Calma*, *supra*, the content of the letter *and* the circumstances surrounding its filing support the inescapable conclusion that the intent to seek review of the December 15, 2000, BVA decision is clear. *See Calma*, 9 Vet.App. at 15; *Losh*, 6 Vet.App. at 90; *Chadwick v. Derwinski*, 1 Vet.App. 74, 76 (1990). Although the notice of appellate rights used by the BVA sufficiently complies with the statutory requirements of 38 U.S.C. § 5104(a), *see Cummings v. West*, 136 F.3d 1468, 1472-74 (Fed. Cir. 1998), the language on that form, as quoted above, suggests that a claimant must first obtain an NOA form and then file that form with the Court in order to perfect an appeal. Thus, the January 2001 letter–given the circumstances of its filing by a pro se appellant following receipt of the language used in the notice of appellate rights–demonstrates a clear intent to appeal. That intent is confirmed by the receipt by the Court on April 19, 2001, of her completed NOA form and the absence of any indication that the appellant ever wavered as to whether to appeal. Accordingly, I would hold the January 2001 letter to be a valid, jurisdiction-conferring NOA. *See Becker, Calma*, and *Losh*, all *supra*.