KASOLD, Chief Judge:
Mrs. Constance Copeland, surviving spouse of veteran Donnie Copeland, appeals through counsel a June 8, 2011, decision of the Board of Veterans’ Appeals (Board) that denied (1) accrued benefits for osteosarcoma of the left mandible[2] and (2) dependency and indemnity compensation (DIC) for Mr. Copeland’s death due to osteosarcoma of the left mandible. Mrs. Copeland argues that (1) Congress’s assignment of an effective date of October 10, 2008 (the date of enactment), for 88 U.S.C. § 5121A violated the equal protection component of the Fifth Amendment of the U.S. Constitution, and (2) the Board failed to provide an adequate medical opinion pursuant to the duty to assist for DIC claims. The Secretary disputes Mrs. Copeland’s arguments. Because no precedential decisions of this Court have addressed Mrs. Copeland’s specific constitutional argument, a panel opinion is warranted. See Frankel v. Derwinski, 1 Vet. App. 23, 25-26 (1990). For the reasons stated below, the Board decision on appeal will be affirmed.
I. FACTS
Mr. Copeland served on active duty in the U.S. Air Force from 1974 to 1985. In May 1977, he complained of pain in the left side of his jaw and neck, which was assessed as a cervical muscle spasm, and in July 1978 he suffered a traumatic injury that fractured his # 8 tooth — the right upper front tooth. In 1995, he reported a toothache and pain in the lower left region of his mouth and, in April 1996, was diagnosed with osteosarcoma of the left mandible. In November 1996, he filed a claim for benefits for this condition. The Board denied his claim in October 2002, and he did not appeal that decision.
In March 2007, Mr. Copeland requested the reopening of his claim, but he died in August 2007 as a result of, inter alia, os-teosarcoma. Mrs. Copeland filed for accrued benefits and DIC in October 2007. See 38 U.S.C. § 5121(a) (allowing surviving spouses to file for due and unpaid benefits that the veteran “was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death”). Subsequent thereto, and at the heart of Mrs. Copeland’s argument on appeal, Congress authorized a veteran’s surviving spouse to be substituted for his or her deceased spouse in a pending claim for benefits “for the purposes of processing the claim to completion,” if substitution is sought within one year of the veteran’s death. 38 U.S.C. § 5121A; see also Pub.L. No. 110-389, § 212(c) (enacted Oct. 10, 2008). Congress determined that section 5121A would operate only where a veteran died on or after the date, of the *88 statute’s enactment — here, October 10, 2008. See id. The Secretary’s proposed interpretation of this statute is that a substitute claimant — as opposed to an accrued benefits claimant — “could submit evidence and generally would have the same rights regarding hearings, representation, and appeals as would have applied to the claimant had the claimant not died.” Substitution in Case of Death of Claimant, 76 Fed.Reg. 8666, 8669 (Feb. 15, 2011).
In the June 2011 decision on appeal, the Board denied Mrs. Copeland’s claim, because (1) the evidence demonstrated an in-service traumatic injury to a tooth on the upper right side, not the left mandible; (2) the first sign of permanent pain in the lower left region of Mr. Copeland’s mouth appeared 10 years after service; and (3) the more probative medical evidence — a January 2000 medical opinion — found no causal relationship between the in-service traumatic injury and osteosarcoma. In weighing the medical evidence, the Board noted that the January 2000 VA medical opinion was based on an accurate presentation of the facts and included a complete rationale, while (1) a January 2007 letter[3] from a private physician was general and inconclusive, (2) a June 1998 letter from a treating physician contained incorrect facts, and (3) journal articles submitted by Mrs. Copeland were too general to be assigned significant probative weight.
II. PARTIES’ARGUMENTS
Mrs. Copeland’s primary argument is that Congress’s assignment of an effective date of October 10, 2008, for the substitution of a surviving spouse as provided in 38 U.S.C. § 5121A violates the equal protection component of the Fifth Amendment. See U.S. v. Kokinda, 497 U.S. 720, 733, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (noting that the Due Process Clause of the Fifth Amendment contains an equal protection component). More specifically, she asserts that she had to file a claim for accrued benefits under section 5121(a) because her husband died before October 10, 2008, while surviving spouses of veterans who died on or after October 10, 2008, may be substituted under section 5121A. She contends that there is no rational basis for this different treatment. The Secretary notes that “Congress had to draw the line somewhere” for implementing its new statute, F.C.C. v. Beach Commc’ns, Inc., 508 U.S. 307, 316, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993), and contends that Mrs. Copeland’s argument essentially attacks the validity of the effective dates of all newly enacted statutes that are not made explicitly retroactive.
Mrs. Copeland’s second argument is that the Board failed to provide an adequate medical opinion pursuant to the duty to assist for DIC claims. More specifically, she contends that the January 2000 VA medical opinion was not adequate because the doctor incorrectly stated that (1) Mr. Copeland incurred no trauma to his left mandible, and (2) no significant studies clearly indicated a relationship between a tumor and trauma. The Secretary asserts that the January 2000 VA medical opinion was based on a review of the medical history and the pertinent medical literature, and fully informed the Board on the medical question at issue. See D’Aries v. Peake, 22 Vet.App. 97, 104 (2008) (“An opinion is adequate where it is based upon consideration of the veteran’s prior medical history and examinations and also describes the disability in sufficient detail so that the Board’s ‘evaluation ... will be a fully informed one.’ ” (quoting Ardison v. Brown, 6 Vet.App. 405, 407 (1994))).
*89 III. ANALYSIS
A. Equal Protection
It is well established that, “[u]nless a statute ... interferes with a fundamental right or discriminates against a suspect class, it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose.” Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 457, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988) (internal quotation marks omitted). Mrs. Copeland does not suggest that (1) the effective date established by Congress interfered with a fundamental right, (2) surviving spouses of veterans who died before October 10, 2008, are a suspect class, or (3) her equal protection argument is not subject to rational basis review. Accordingly, the Court will assess the statute under rational basis review.
Under such review, the claimant must “negate every conceivable basis which might support” the classification resulting from the effective date established by Congress, Beach Commc’ns, 508 U.S. at 315, 113 S.Ct. 2096, and show that the classification does not serve “any legitimate purpose,” Wright v. Gober, 10 Vet.App. 343, 348 (1997). Rational basis review also must be undertaken with the recognition that
[t]he task of classifying persons for ... benefits ... inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.
U.S.R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) (citation and internal quotation marks omitted).
Notably, arguments that an otherwise neutral effective date violates equal protection uniformly have been rejected. See Lundeen v. Canadian Pac. Ry. Co., 532 F.3d 682, 691 (8th Cir.2008) (“[Appellee’s] equal protection claim is nothing more than an attack on the amendment’s effective date. Every retroactive statute, by necessity, imposes different standards on parties affected by the statute, and those differences are directly tied to the statute’s effective date. Thus, if we gave credence to [this argument] we would in essence be holding [that] Congress violates the equal protection clause every time it passes retroactive legislation.”); SeaRiver Maritime Fin. Holdings Inc. v. Mineta, 309 F.3d 662, 680 (9th Cir.2002) (“The fact that the legislature could have chosen an earlier or later effective date does not establish an equal protection violation.”); Luck v. D.C. Parole Bd., 996 F.2d 372, 374-75 (D.C.Cir.1993) (finding no equal protection violation in legislation allowing time on parole to be credited as time served but only for parole time occurring after the legislation’s effective date); see also Cardoza-Fuentes v. Holder, 362 Fed.Appx. 799, 800 (9th Cir.2010) (finding no equal protection violation where appellant’s plea was entered after the effective date of the Anti-Terrorism and Effective Death Penalty Act because she was not similarly situated to those who entered pleas prior to the effective date of the act).
Mrs. Copeland presents no reason why the effective date established by Congress for section 5121A should be viewed any differently than those addressed in the cases noted above. More specifically, Mrs. Copeland does not explain why the selection of the legislation’s enactment date as its effective date is “patently arbitrary and irrational,” as required to find it constitutionally defective under the rational basis review. Raugust v. Shinseki, 23 Vet.App. *90 475, 479 (2010) (internal quotation marks omitted); see Giancaterino v. Brown, 7 Vet.App. 555, 559 (1995) (noting that a statute’s presumption of rationality “‘can only be overcome by a clear showing of arbitrariness and irrationality’” (quoting Hodel v. Indiana, 452 U.S. 314, 331-32, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981))); see also Beach Commc’ns, supra. Although Mrs. Copeland argues that she is treated differently from surviving spouses of veterans who died on or after October 10, 2008, disparate treatment without a demonstration of irrationality does not violate the U.S. Constitution. See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 84, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (“[W]e will not overturn [legislation] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [legislation is] irrational.” (internal quotation marks omitted)).
Moreover, under rational basis review, “any reasonably conceivable” reason for an assigned effective date will serve to sustain its constitutionality. Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (under rational basis review, government is not required to “actually articulate” its purpose, so long as “there is any reasonably conceivable state of facts that could provide a rational basis for the classification” (internal quotation marks omitted)). Here, although the legislative history of section 5121A does not articulate the specific basis for the established effective date, we can conceive of at least two: (1) To avoid the procedural difficulties in retroactively applying a new law of substitution to claimants who had already filed for or been denied accrued benefits, see Consol. Edison Co. of N.Y. Inc. v. Abraham, 314 F.3d 1299, 1304 (Fed.Cir.2002) (“administrative convenience of government” constitutes a rational basis for legislation); see also U.S. v. Campos-Diaz, 472 F.3d 1278, 1280 (11th Cir.2006) (holding that the implementation of fast-track immigration sentencing programs in some districts and not others “is rationally related to the legitimate government interest of conserving ... judicial resources and easing congestion in judicial districts with a high volume of immigration cases”); and (2) to protect the public fisc by not enacting retroactively a law potentially favorable to surviving spouses, see Reeves v. West, 11 Vet.App. 255, 260 (1998) (“Financial concerns are, of course, one of the most common and accepted bases for legislation that affects government spending. Therefore, a desire to reduce federal spending provides a rational basis for the enactment of [statutes].” (citations omitted)).
Overall, assigning an effective date is a common ingredient of implementing any statute, and “the fact [that] the [effective date] might have been [implemented] differently ... is a matter for legislative, rather than judicial, consideration.” Fritz, 449 U.S. at 179, 101 S.Ct. 453. Because the differing treatment is caused by an effective date that has a rational relationship to a legitimate governmental purpose for enacting legislation, the effective date of section 5121A does not violate the equal protection component of the Fifth Amendment. See Kadrmas, supra.[4]
*91 B. Inadequate Medical Opinion
Mrs. Copeland additionally argues that the Board failed to provide an adequate medical opinion pursuant to the duty to assist for DIC claims because the January 2000 medical opinion is inadequate. More specifically, she acknowledges that the opinion found no relationship between osteosarcoma and Mr. Copeland’s in-service trauma, but contends that the doctor *92 incorrectly stated that (1) Mr. Copeland incurred no trauma to his left mandible, and (2) no significant studies clearly indicate a relationship between a tumor and trauma.
First, Mrs. Copeland fails to demonstrate that the VA doctor incorrectly stated that Mr. Copeland incurred no trauma to his left mandible. See Hilkert v. West, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant bears the burden of demonstrating error on appeal). Although Mrs. Copeland notes that her husband complained of pain in his left jaw in May 1977, the' service medical record associated with that complaint does not reflect any assertion of trauma, and the assessment was a muscle strain. Moreover, Mr. Copeland first alleged in May 2000 that this 1977 pain was caused by trauma, and the Board found that this recent testimony was not an accurate presentation of the facts. Based on the record of proceedings, the Board’s finding is plausible and not clearly erroneous. See Gilbert v. Derwinski, 1 Vet.App. 49, 52 (1990) (“ ‘A finding is “clearly erroneous” when ... the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ ” (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948))); see also U.S. Gypsum, 333 U.S. at 396, 68 S.Ct. 525 (noting that “[w]here [witness] testimony is in conflict with contemporaneous documents[,] we can give it little weight,” and finding lower court’s determination to the contrary “clearly erroneous”).
Mrs. Copeland also fails to demonstrate that the VA doctor incorrectly assessed the medical studies addressing trauma and osteosarcoma. Although Mrs. Copeland identifies in the record one reported case of a dog being diagnosed with a tumor where it had experienced a trauma six years prior, and one study noting that 11 of 88 adults diagnosed with osteosarcoma reported prior trauma in the area of the cancer, the doctor found “no significant studies ... associating] tumors with trauma that occurred several years in the past ”[5] (R. at 472 (emphasis added)). Moreover, Mrs. Copeland fails to demonstrate any misstatement of fact by the doctor or that she has the medical expertise to question the doctor’s assessment of the medical studies addressing trauma and osteosarcoma. See Espiritu v. Derwinski, 2 Vet.App. 492, 495 (1992) (holding that, in general, a lay person may not “offer probative evidence on a matter normally regarded to be the province of an expert”); see also Rizzo v. Shinseki, 580 F.3d 1288, 1291 (Fed.Cir.2009) (holding that a VA medical professional is presumed competent in the absence of clear evidence to the contrary); Hilkert, supra.
Overall, Mrs. Copeland fails to demonstrate that the January 2000 VA medical opinion rested on an incorrect or incomplete understanding of the facts, or that the opinion otherwise is inadequate. See D 'Aries and Hilkert, both supra.
IV. CONCLUSION
Upon consideration of the foregoing, the June 8, 2011, Board decision is AFFIRMED.

. The mandible is the "horseshoe-shaped bone forming the lower jaw." Dorland’s II-lustrated Medical Dictionary 1101 (32d ed. 2012).

. Although referring to an "August 2007 letter,” the Board clearly was discussing the content of a January 2007 letter. Record (R.) at 10; see R. at 132.

. Although our dissenting colleague believes the Court lacks the power to find a statute unconstitutional on its face, we have no such misgivings. The plain language of 38 U.S.C. § 7261(a)(1) and (3) allow the Court to "decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions,” and “hold unlawful and set aside [Board] decisions ... contrary to constitutional right.” The inability of the Court to find that a statute relied upon by the Board is unconstitutional would render null our au *91 thority to "decide all relevant questions of law” and “set aside [Board] decisions ... contrary to constitutional right,” and would vitiate our duty as a Court exercising judicial power to recognize that the Constitution is superior to statute. Id.; see Freytag v. Comm'r, 501 U.S. 868, 889, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) ("Our cases involving non-Article III tribunals have held that these courts exercise the judicial power of the United States.”). We find no difference between finding that Board decisions relying on a statute were contrary to constitutional right — ■ which we are explicitly authorized to do — and finding that, for the purposes of bodies bound by this Court's precedents, a statute is unconstitutional. Moreover, although not binding on the Court, the parties agree. See Secretary’s Supplemental Brief at 7 ("[L]egislative courts that possess [judicial] power must, in exercising it, recognize the superiority of the Constitution and ... share in the power to invalidate statutes that are found to be inconsistent with the Constitution.”); Appellant's Supplemental Brief at 2 (Court would be issuing advisory opinions if it could "consider the constitutionality of an action by VA but” lacked the authority to "strike down an unconstitutional statute” relied upon by VA).
The Court's authority to find a statute unconstitutional is well settled in precedential decisions of the Court. See Reeves, 11 Vet.App. at 257 ("[I]f a constitutional question is properly before the Court ..., this Court has the power to make determinations regarding it.”); Giancaterino, 7 Vet.App. at 557 ("[T]his Court is empowered to make determinations regarding constitutional claims.”); Dacoron v. Brown, 4 Vet.App. 115, 119 (1993) ("Nothing in title 38 prohibits a constitutional challenge to any of the provisions from that title from being litigated in U.S. district court.... [But] nothing in the above [statement] implies that this Court does not have power to review claims pertaining to the constitutionality of statutory and regulatory provisions. Such authority is inherent in the Court’s status as a court of law, and is expressly provided in 38 U.S.C. § 7261(a)(1) ....” (internal citations omitted)); Strott v. Derwinski, 1 Vet.App. 114, 116-18 (1991) (finding that section 402 of the Veterans’ Judicial Review Act [VJRA] did not violate the equal protection component of the Fifth Amendment or the Fifth Amendment right to due process).
Our authority to decide constitutional issues also is recognized by other Federal appellate courts and in the legislative history establishing the Court. See Veterans for Common Sense v. Shinseki, 678 F.3d 1013, 1032 (9th Cir.2012) (“[Section 7261] leaves no doubt that the Veterans Court has the authority to adjudicate veterans’ constitutional claims.”); Viet. Veterans of Am. v. Shinseki, 599 F.3d 654, 656 (D.C.Cir.2010) ("The [Court of Appeals for Veterans Claims (CAVC) ] may review all legal issues, including constitutional claims.... ”); Johnson v. VA, 351 Fed.Appx. 288, 290 (10th Cir.2009) ("While the B[oard] lacks power to determine constitutional questions regarding veterans benefits, Congress has granted such power to the CAVC and the Federal Circuit.”) (citations omitted); Beamon v. Brown, 125 F.3d 965, 971 (6th Cir.1997) ("[T]he VJRA explicitly granted comprehensive and exclusive jurisdiction to the [CAVC] and the Federal Circuit. ... This jurisdiction includes constitutional issues .... ”); see also Price v. United States, 228 F.3d 420, 422 (D.C.Cir.2000) (same); H.R. REP. No. 100-963, at 5 (1988), 1988 U.S.C.C.A.N. 5782, 5786 (CAVC authority extends to "all questions involving benefits under laws administered by the VA. This would include factual, legal, and constitutional questions.”), 26 (CAVC is "intended to provide a more independent review by a body which is not bound by the [Secretaiy]’s view of the law, and that will be more clearly p[er]ceived as one which has as its sole function deciding claims in accordance with the Constitution and laws of the United States.”); S. Rep. NO. 100-418, at 60 (1988) ("[Subsections (a)(1) through (a)(3)] are derived specifically from section 706 of the [Administrative Procedure Act (APA) ]. Thus, it is the Committee’s intention that the [CAVC] shall have the same authority as it would in cases arising under the APA to review and act upon ... constitutional challenges.”).

. As stated in part I, supra, the in-service trauma occurred in July 1978, but Mr. Copeland first mentioned pain in his left mandible in 1995.