# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-1913

SHERMAN E. MORRIS, SR., APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On appeal from the Board of Veterans' Appeals

(Decided March 20, 2014)

*Douglas J. Rosinski*, of Columbia, South Carolina, was on the brief for the appellant.

*Will A. Gunn*, General Counsel; *David L. Quinn*, Acting Assistant General Counsel; *Michael A. Carr*, Acting Deputy Assistant General Counsel; and *Laura Bernasconi*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before LANCE, BARTLEY, and GREENBERG, *Judges*.

BARTLEY, *Judge*, filed the opinion of the Court. LANCE, *Judge*, filed a separate opinion concurring in the result.

BARTLEY, *Judge*: Sherman E. Morris, Sr. (Mr. Morris), who was the brother, fiduciary, and legal custodian of deceased veteran Burnell L. Morris (the veteran), appeals through counsel a February 27, 2012, Board of Veterans' Appeals (Board) decision denying entitlement to benefits due and payable at the time of the veteran's death. Record (R.) at 3-15. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Mr. Morris argues that he is entitled to these benefits because he qualifies as an heir of the veteran's estate under Georgia state law and because that state law is not preempted by 38 U.S.C. § 5121, the Federal statute that narrowly defines—and thus excludes him from—the classes of individuals eligible to receive accrued benefits. Based on the novelty of Mr. Morris's arguments, panel consideration is appropriate. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990). For the reasons set forth below, however, the Court will reject Mr. Morris's arguments and affirm the February 2012 Board decision.

## I.  FACTS

The veteran served on active duty in the U.S. Navy from June 1974 to September 1988. *See* R. at 4, 480. In August 1988, he was diagnosed with chronic, paranoid schizophrenia and discharged as unfit for further duty. R. at 428-30. In March 1997, the VA regional office (RO) granted service connection for schizophrenia and awarded a 50% disability evaluation effective September 10, 1996, (R. at 301-03, 316-19) but withheld monthly disability compensation payments because the veteran was on the temporary disabled retirement list and receiving monthly military retirement payments. R. at 181, 291-94; *see* 38 U.S.C. § 5304 (1994). Section 5304, although since revised, at the time generally prohibited concurrent payment of military retirement pay and VA disability compensation.

In September 2003, upon request of the veteran and after a VA medical examination, the RO increased the disability evaluation for service-connected schizophrenia to 100% effective February 7, 2001. R. at 181-94, 209. The increase was accompanied by two caveats. First, VA advised that, in the examining physician's opinion, the veteran was not competent to manage his personal affairs and VA proposed to make an official determination of incompetency. R. at 193-94. Second, VA advised that, although the veteran was no longer receiving military retirement pay, VA would withhold the monthly increase in disability compensation payments until it could confirm the total amount of severance pay the veteran had received after being released from the temporary disabled retirement list. R. at 181-82; *see* 38 U.S.C. § 1161 (2000) ("The deduction of disability severance pay from disability compensation, to the extent required by section 1212[(c)] of title 10, shall be made at a monthly rate not in excess of the rate of compensation to which the former member would be entitled based on the degree of such former member's disability as determined on the initial Department rating.").

In February 2004, VA found the veteran not competent to handle disbursement of VA funds effective February 7, 2004. R. at 169-75. The following month, VA recognized Mr. Morris as the veteran's fiduciary and legal custodian but would not release the withheld funds until Mr. Morris obtained an $85,000 surety bond.[1] R. at 155; *see* 38 C.F.R. § 13.105 (2013) ("The Veterans Service

---

[1] In the VA context, a "surety bond" is an agreement whereby a fiduciary pledges personal assets or obtains a corporate insurance policy as insurance against the fiduciary's actions in the performance of the fiduciary's work or services, to protect a beneficiary's estate from mismanagement or abuse. *See* VA ADJUDICATION PROCEDURES MANUAL REWRITE, pt. XI, ch. 3, sec. E.22.

Center Manager may require a legal custodian, custodian-in-fact or chief officer of a private institution recognized to administer Department of Veterans Affairs benefits on behalf of a beneficiary, to furnish a corporate surety bond in an amount determined to be sufficient to protect the interest of the beneficiary.").

An April 2005 VA field examiner found the veteran well cared for and recommended paying the full monthly amount of VA compensation beginning that month. R. at 151-54. But the field examiner also recommended that VA continue to withhold the more than $75,000 in withheld and unpaid compensation until Mr. Morris posted a surety bond with the RO. R. at 154.

The veteran died on May 30, 2005, in Atlanta, Georgia, from organic heart disease. R. at 129. At the time of the veteran's death, Mr. Morris had not obtained a surety bond and VA had not released the more than $75,000 in compensation benefits due but unpaid. In December 2005, Mr. Morris sought reimbursement for expenses paid for the veteran's last sickness and burial, and VA paid that benefit in the amount of $1,749.45, in August 2006. R. at 102-03, 106. When Mr. Morris sought the due and unpaid "accrued benefits" VA had been withholding (R. at 93), VA advised him that as a fiduciary he was not entitled to accrued benefits other than those already paid to reimburse burial expenses (R. at 78-88). Mr. Morris filed a Notice of Disagreement in February 2007, and VA issued a Statement of the Case in December 2008. R. at 78-88. Thereafter, Mr. Morris appealed to the Board. R. at 76.

In October 2011 testimony before the Board, Mr. Morris stated that, per VA instructions, he returned $2,299 in disability compensation, which was paid into the fiduciary's account on June 1, 2005, consisting of the payment for the month of the veteran's death. R. at 26-27; *see* 38 U.S.C. 5112(b)(1) (stating that the effective date for the discontinuance of disability compensation based on a payee's death "shall be the last day of the month before such . . . death occurs"). Mr. Morris further argued that as the veteran's fiduciary he was entitled to the tens of thousands of dollars in due and unpaid compensation. *See generally* R. at 18-42.

In the February 27, 2012, decision on appeal, the Board found that Mr. Morris had at no time obtained the required surety bond and that Federal law did not permit payment of due but unpaid compensation to Mr. Morris after the veteran's death, either as the veteran's legal custodian or as his

3

brother.  Accordingly, the Board denied entitlement to benefits due and payable at the time of the veteran's death.  R. at 3-14.  This appeal followed.

## II. ANALYSIS

On appeal, Mr. Morris does not challenge VA's previous decisions to withhold portions of the veteran's monthly compensation or to condition release of those withheld funds during the veteran's lifetime on Mr. Morris's obtaining a surety bond.  Rather, Mr. Morris argues that he is entitled to the withheld funds due but unpaid at the time of the veteran's death by operation of Georgia state law.  To support this conclusion, Mr. Morris contends that courts have misinterpreted 38 U.S.C. § 5112—which establishes the date that a deceased payee's compensation is discontinued—to terminate a "payee's rights in already awarded payments" at the time of the payee's death.  Appellant's Brief (Br.) at 9-13.  Once it is clear that "[s]ection 5112 discontinues *only* future monthly payments as of the last day of the month before the payee's death" (*id.* at 12), Mr. Morris continues, the right to those already awarded payments becomes part of the payee's estate, which is distributed according to state law unless state law has been preempted by Federal legislation.  *Id.* at 14-18.  Finally, Mr. Morris contends that 38 U.S.C. § 5121—which specifies the categories of individuals entitled to receive benefits due and unpaid—does not preempt Georgia state inheritance law.  Thus, Mr. Morris concludes, he is entitled as the veteran's heir to a portion of the more than $75,000.  *Id.* at 18-26.  The Court is not persuaded by Mr. Morris's arguments.

### A. VA Accrued Benefits Due and Unpaid

In relevant part, 38 U.S.C. § 5121 states as follows:

Except as provided in section 3329 and 3330 of title 31, periodic monetary benefits (other than insurance and servicemen's indemnity) under laws administered by the Secretary to which an individual was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death (hereinafter in this section and section 5122 of this title referred to as "accrued benefits") and due and unpaid, shall, upon the death of such individual be paid as follows:

> (1) Upon the death of a person receiving an apportioned share of benefits payable to a veteran, all or any part of such benefits to the veteran or to any other dependent or dependents of the veteran, as may be determined by the Secretary.
> (2) Upon the death of a veteran, to the living person first listed below:
>> (A) The veteran's spouse.

4

(B) The veteran's children (in equal shares).
(C) The veteran's dependent parents (in equal shares).
(3) Upon the death of a widow or remarried surviving spouse, to the children of the deceased veteran.
(4) Upon the death of a child, to the surviving children of the veteran who are entitled to death compensation, dependency and indemnity compensation, or death pension.
(5) Upon the death of a child claiming benefits under chapter 18 of this title, to the surviving parents.
(6) In all other cases, only so much of the accrued benefits may be paid as may be necessary to reimburse the person who bore the expense of last sickness and burial.

38 U.S.C. § 5121(a); *see also* 38 C.F.R. § 3.1000(a) (2013). Section 5121 "allows a qualified survivor to stand in the deceased veteran's shoes and carry on the veteran's claim for the limited purpose of receiving a single lump sum payment of money that was 'due and unpaid' to the veteran at the time of death."[2] *Sheets v. Nicholson*, 20 Vet.App. 463, 466 (2006). Therefore, a claim for benefits due and unpaid such as presented in this case "is not an original claim independent of the veteran's underlying claim, but entirely derivative of a veteran's claim." *Id.*; *see also Zevalkink v. Brown*, 102 F.3d 1236, 1241-42 (Fed. Cir. 1996).[3]

---

[2] In *Bonny v. Principi*, 16 Vet.App. 504, 506-08 (2002), we held that section 5121(a) created two distinct categories of benefits: (1) "accrued benefits," which were benefits to which a claimant was entitled at death based upon evidence in the claims file at that time, and which were limited to a two-year period prior to the claimant's death; and (2) "benefits awarded but unpaid" under existing ratings or decisions at the time of the claimant's death, which were not subject to a two-year limitation. Congress amended section 5121(a) in 2003, removed the two-year limitation, and eliminated the comma that formed the basis for *Bonny*'s distinction between the two categories of benefits. *See Nolan v. Nicholson*, 20 Vet.App. 340, 347 n.3 (2006); *see also* Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 104(c)(1), 117 Stat. 2651, 2656. *See generally* VA Fast Letter 07-07 (Mar. 29, 2007) (explaining VA's changes to its accrued benefits regulation to conform to the amended section 5121(a)).

[3] Previously, the U.S. Court of Appeals for the Federal Circuit and this Court had held that "Congress intended that a veteran's claim would be extinguished upon . . . death." *Reeves v. Shinseki*, 682 F.3d 988, 996 (Fed. Cir. 2012) (citing *Zevalkink* and *Landicho v. Brown*, 7 Vet. App. 42, 47 (1994)). In 2008, Congress enacted legislation that explicitly authorizes an accrued-benefits claimant to be substituted in VA proceedings for a deceased payee without having to file a separate accrued-benefits claim. *See* Veterans' Benefits Improvement Act of 2008, Pub. L. No. 110-389, § 212, 122 Stat. 4145, 4151 (codified at 38 U.S.C. § 5121A). Recognizing a shift in Congress's view on the matter, the Court adopted the approach outlined in section 5121A and now permits substitution where an appellant dies with a case pending before the Court. *See Breedlove v. Shinseki*, 24 Vet.App. 7, 8-9 (2010) (per curiam order); *see also Reeves*, 682 F.3d at 997 ("[T]here is no continuing justification for refusing to allow an appropriate accrued-benefits claimant to be substituted for a veteran who dies while his appeal is pending before this court."). However, section 5121A applies only to claims where the payee died after October 10, 2008, *see generally Copeland v. Shinseki*, 26 Vet.App. 86 (2012), and is not applicable here; in any case, the appellant would not qualify for substitution.

In enacting section 5121, Congress limited eligibility for accrued benefits due and unpaid to the same few categories of dependent family members for whom a veteran could seek additional disability compensation while alive.[4] *See* 38 U.S.C. §§ 1115, 1135; *see also* 38 U.S.C. §§ 101(4) (defining "child"), 102 (relating to "dependent parent").  As relevant here, where we are dealing with the death of a veteran and not the death of another category of VA beneficiary, the only persons entitled to accrued benefits due and unpaid under the statute are, in the following order, the veteran's surviving spouse or the veteran's children[5] or the veteran's dependent parents.  38 U.S.C. § 5121(a)(2).  If no eligible listed survivor is alive at the time of the veteran's death, then accrued benefits due and unpaid may be paid to any person "who bore the expense of last sickness and burial," but "only so much of the accrued benefits [may be paid] . . . as may be necessary to reimburse the person."  *Id.* § 5121(a)(6).  "No other categories of payee at death are provided in the statute."  *Youngman v. Shinseki*, 699 F.3d 1301, 1303 (Fed. Cir. 2012).  Both this Court and the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) have repeatedly affirmed VA denials of accrued-benefits claims by persons other than those listed in section 5121(a).  *See, e.g.*, *id.* at 1303-04 (denying accrued benefits to a deceased veteran's fiduciary for distribution to the veteran's "heirs"); *Pelea v. Nicholson*, 497 F.3d 1290, 1291-92 (Fed. Cir. 2007) (denying accrued benefits to deceased claimant's "estate"); *Richard v. West*, 161 F.3d 719, 721-23 (Fed. Cir. 1998) (denying accrued benefits to a deceased veteran's brother); *Wilkes v. Principi*, 16 Vet.App. 237, 242 (2002) (denying accrued benefits to a deceased veteran's nephew); *see also Caranto v. Brown*, 4 Vet.App. 516, 518 (1993) (remanding the matter for the Board to determine whether veteran's daughter qualified as a "child" for accrued-benefits purposes).

Under the clear terms of section 5121(a), Mr. Morris is not eligible for VA accrued benefits due and unpaid at the time of the veteran's death.  His status as the deceased veteran's brother, which

---

[4] The deceased VA beneficiary in this case was a veteran, and we therefore refer throughout our analysis to VA claimants or beneficiaries who are veterans.  *See* 38 U.S.C. § 5121(a)(2). We recognize, however, that under other provisions of section 5121 the deceased VA beneficiary might be someone other than a veteran, such as a veteran's surviving spouse or a veteran's child, who dies with a VA claim pending.  38 U.S.C. § 5121(a)(3)-(4).

[5] Although the term "children" is not defined in sections 1115, 1135, or 5121(a), a separate veterans statute defines child—with additional restrictions not relevant here—as an unmarried person who (1) is under the age of 18, (2) became permanently incapable of self-support before turning 18, or (3) is pursuing a qualified educational program between the ages of 18 and 23.  *See* 38 U.S.C. § 101(4); *see also Nolan*, 20 Vet.App. at 348.

6

is not one of the categories of persons listed in section 5121(a), makes him ineligible for accrued benefits due and unpaid. *See Richard*, *supra*.

Nor does the fact that Mr. Morris served as the veteran's fiduciary before the veteran died lead to eligibility. In *Youngman*, the Federal Circuit held that a "veteran's fiduciary does not have standing or authority to receive accrued benefits that were unpaid at the veteran's death, other than in accordance with payments as provided in 38 U.S.C. § 5121(a), to designated family members or for reimbursement of the expenses of last sickness and burial." 699 F.3d at 1304. In so holding, the court rejected the fiduciary's argument that she was entitled to payment by virtue of 38 U.S.C. § 5502 (Payments to and supervision of fiduciaries). Although this provision "allows a fiduciary to stand in the shoes of a veteran," the Federal Circuit reasoned, "the statute does not grant the fiduciary rights beyond those of the veteran himself." *Id.* Because the veteran "died without any heirs in the categories qualifying under § 5121, his unpaid benefits died with him." *Id.* To hold otherwise, the Federal Circuit noted, "would lead to the peculiar result whereby non-qualifying heirs of veterans with fiduciaries could receive the veteran's accrued unpaid benefits, while non-qualifying heirs of veterans without fiduciaries would not be eligible to receive such benefits." *Id.*

Thus, under settled precedent, Mr. Morris is not entitled to accrued benefits due and unpaid at the time of the veteran's death because he is not an eligible accrued-benefits claimant. Recognizing this, the Board properly denied his claim. *See* R. at 13-14.

### B. Mr. Morris's Arguments

Mr. Morris contends that the caselaw discussed above does not prevent his receiving accrued benefits due and unpaid because neither court has considered the specific arguments he now advances. However, nothing in Mr. Morris's arguments persuades the Court that he is eligible to receive these benefits.[6]

---

[6] Our concurring colleague believes that Mr. Morris's arguments are foreclosed by controlling Federal Circuit precedent and we need not address them. *See post*. However, "prior cases that do not squarely address an issue are not binding precedent." *Wingard v. Shinseki*, 26 Vet.App. 334, 348 (2013) (citing *United States v. County of Cook, Illinois*, 170 F.3d 1084, 1088 (Fed. Cir. 1999)); *see also Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1581 (Fed. Cir. 1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises."). Thus, although we ultimately find Mr. Morris's arguments unpersuasive, we cannot simply ignore them under the assumption that this Court or the Federal Circuit previously considered and rejected them *sub silentio*.

*1. Whether Federal or State Law Controls In This Case*

Mr. Morris asserts that, barring contrary disposition by Federal law, the veteran's right to "already awarded payments . . . not terminated before death" passes to his estate. Appellant's Br. at 14-15. Mr. Morris further asserts that under Georgia state law he qualifies as an heir of the veteran's estate. *See id.*; *see also* Ga. Code Ann. § 53-2-1(c) (2013) (providing that siblings of an intestate decedent shall share the decedent's estate equally when the decedent is not survived by a spouse, child, descendant of a child, or parent). Finally, Mr. Morris contends that Congress did not preempt state laws of descent when it enacted 38 U.S.C. § 5121 and, hence, he is entitled to the disability compensation due and unpaid at the time of the veteran's death, approximately $75,000. Appellant's Br. at 16-27.

The Supremacy Clause of the U.S. Constitution provides that Federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. "Under this principle, Congress has the power to preempt state law." *Arizona v. United States*, 132 S. Ct. 2492, 2500 (2012); *see Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (Fed. Cir. 1998) ("Pursuant to the Supremacy Clause, state causes of action are preempted if they stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting a statute." (internal quotation marks and citation omitted)).

There are three circumstances in which Federal law will supercede state law. First, Congress may preempt state law by including an express provision in a Federal statute withdrawing certain powers from the states. *Arizona*, 132 S. Ct. at 2500-01. This is known as express preemption. Second, preemption of state law may be inferred from "a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it' or where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* at 2501 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). This is known as field preemption. Third, Federal law will preempt state law when there is a conflict between the two, such that "compliance with both federal and state regulations is a physical impossibility," *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes

and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). This is known as conflict preemption. When Congress legislates in a field "which States have traditionally occupied," courts should "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice*, 331 U.S. at 230.

Mr. Morris argues that Congress did not expressly preempt state inheritance laws in the context of accrued benefits, and the Court agrees: nothing in section 5121 or any related statute *explicitly* withdraws from the states the power to propound inheritance laws that might affect veterans. *See Arizona*, 132 S. Ct. at 2500-01.

However, to the extent that a state statute such as Georgia's would purport to pass VA accrued benefits due and unpaid to heirs defined by state law—that is, to anyone other than those persons specified in section 5121(a)(2)—the state law cannot survive a Federal conflict preemption analysis. Mr. Morris emphasizes the general primacy of state law in inheritance matters and urges the Court to avoid reading section 5121 in a manner that would conflict with such law.

Although neither this Court nor the Federal Circuit has addressed preemption in the context of veterans benefits, the Supreme Court has recognized that Federal law affecting veterans benefits will preempt state laws that impede the objectives of Federal legislation, even in areas of traditional state concern. In *United States v. Oregon*, 366 U.S. 643 (1961), for example, the Supreme Court addressed the constitutionality of the predecessor to the current 38 U.S.C. § 8520, which provided that "when a veteran dies without a will or legal heirs in a veterans' hospital, his personal property shall immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post Fund . . . ." *Id.* at 644 (internal quotation marks omitted). Rejecting Oregon's argument that the Federal statute invaded the province of the states—the usual recipients of the property of decedents who die without wills and without heirs—the Court stated:

> Congress undoubtedly has the power—under its constitutional powers to raise armies and navies and to conduct wars—to pay pensions, and to build hospitals and homes for veterans. We think it plain that the same sources of power authorize Congress to require that the personal property left by its wards when they die in government facilities shall be devoted to the comfort and recreation of other ex-service people who must depend upon the Government for care. The fact that this law pertains to the devolution of property does not render it invalid. Although it is true that this is

an area normally left to the States, it is not immune under the Tenth Amendment from laws passed by the Federal Government which are, as is the law here, necessary and proper to the exercise of a delegated power.

*Id.* at 648-49.

Similarly, in *Ridgway v. Ridgway*, 454 U.S. 46 (1981), the Court held that the state of Maine could not, as part of divorce proceedings, impose a constructive trust on the proceeds of a U.S. Army sergeant's Servicemen's Group Life Insurance Act (SGLIA) policy. Federal law provided that a service member could change the beneficiary of his SGLIA policy at any time, and the sergeant did so, designating his second wife as the insurance proceeds recipient, rather than his first wife and children. *Id.* at 48-49, 56. When the first wife sued following the sergeant's death, the state supreme court found in her favor and ordered the imposition of the trust. *Id.* at 49-50. "Notwithstanding the limited application of Federal law in the field of domestic relations generally," the Supreme Court stated, "this Court, even in that area, has not hesitated to protect, under the Supremacy Clause, rights and expectancies established by Federal law against the operation of state law, or to prevent the frustration and erosion of the congressional policy embodied in the federal rights." *Id.* at 54 (citations omitted). Given SGLIA's "unqualified directive to pay the proceeds to the properly designated beneficiary" and Congress's unquestioned interest in enhancing the morale of service members through the provision of life insurance immune to "conflicting" state legal claims, the Supreme Court concluded that "the controlling provisions of the SGLIA prevail over and displace inconsistent state law." *Id.* at 56-57, 60; *see also Wissner v. Wissner*, 338 U.S. 655, 659-61 (1950) (holding that California community property law could not divert to the service member's widow insurance proceeds from SGLIA's predecessor program when the service member had named his parents as beneficiaries).

The Supreme Court distinguished *Ridgway* in *Rose v. Rose*, 481 U.S. 619 (1987), holding that the veterans benefits provisions of title 38 did not conflict with, and hence did not preempt, a Tennessee statute that required consideration of VA disability benefits in the calculation of child support payments. When the father, whose sole income was composed of VA disability benefits, failed to pay the ordered support, the state court held him in contempt. *Id.* at 622-23. The Supreme Court rejected his Federal preemption argument, explaining why *Ridgway* did not control. "[T]the critical difference between *Ridgway* and the present case," the Court said, was that Congress did not

10

make Mr. Ridgway "the exclusive beneficiary of disability benefits." *Id.* at 634. Instead, the Court noted, "Congress clearly intended veterans' disability benefits to be used, in part, for the support of veterans' dependents." *Id.* at 631; *see also id.* at 634. Because the state statute, like the Federal provisions, considered the needs of the veteran *and* the veteran's children, the Court found the laws not in conflict. *Id.* at 636.

Guiding conflict preemption principles relevant to veterans law can be deduced from *Oregon*, *Ridgway*, and *Rose*. First, the accrued-benefits statute should not be considered in isolation but as part of the congressional scheme to provide benefits for veterans and their dependents. *See Oregon*, *supra*. Second, when Congress sets forth an "unqualified directive to pay" certain beneficiaries, it is not always necessary to try to accommodate inconsistent state law, even in an area in which the states usually legislate. *See Ridgway*, 454 U.S. at 56; *see also Hillman v. Maretta*, 133 S. Ct. 1943, 1952 (2013) (citing *Ridgway* and *Wissner* approvingly and holding that Federal law preempted a state statute that, in the context of a Federal employee life insurance plan, "interfere[d] with Congress' scheme, because it direct[ed] that the proceeds actually 'belong' to someone other than the named beneficiary by creating a cause of action for their recovery by a third party"). Finally, when determining whether state and Federal statutes affecting veterans benefits can be harmonized and both effectuated, this Court must examine whether the Federal and state laws were intended to serve the interests of the same class of individuals. *See Rose*, 481 U.S. at 631.

Based on these principles, the Court holds that 38 U.S.C. § 5121(a) conflicts with, and therefore preempts, the Georgia statute that would otherwise operate to pass VA accrued benefits due and unpaid to individuals other than those specified in section 5121(a).

First, it is undeniable that "Congress has broad latitude in enacting legislation involving governmental payment of monetary benefits." *Talon v. Brown*, 999 F.2d 514, 517 (Fed. Cir. 1993). This is particularly true in the area of veterans benefits, where Congress has exercised legislative authority since the earliest days of the Republic. *See, e.g.*, *Hayburn's Case*, 2 U.S. (Dall.) 409 (1792) (discussing the Invalid Pensions Act of 1792); *see also Oregon*, 366 U.S. at 648-49. Moreover, section 5121 does not stand alone; it is part of a group of statutes governing payment of benefits administered by the Secretary. *See generally* U.S. Code, Title 38, Pt. IV, Ch. 51, Sbpt. III. Section 5120 specifies how monetary VA benefits are to be paid and delivered. Section 5121, as has already

11

been discussed, addresses the categories of persons to whom VA may disperse certain periodic monetary accrued benefits due and unpaid at the time of a payee's death. Section 5121A sets out a process of substitution for those persons eligible under section 5121 to collect accrued benefits due and unpaid when a VA claimant or VA beneficiary dies. Section 5122 specifies how, when there are no accrued-benefits beneficiaries eligible under 5121, an accrued benefits payee's estate may be entitled to accrued benefits when the accrued benefits payee received but did not negotiate the accrued benefits check prior to the payee's death. *See Wilkes*, 16 Vet.App. at 242 (holding that section 5122 applies to payments received but not negotiated by a payee). Congress's carefully developed scheme in this area is evident even from this small portion of title 38. When considered in conjunction with the entirety of the veterans benefits regime, it is evident that we must view Congress's enactment of section 5121 as a precise delineation of those categories of persons eligible to receive accrued benefits due and unpaid upon the death of a VA claimant or VA beneficiary. *See, e.g.*, *Mehrkens v. Blank*, 556 F.3d 865, 870 (8th Cir. 2009) (noting that "Congress has preempted the field for veterans' benefits and set up an elaborate remedial scheme").

For this reason, we cannot subscribe to Mr. Morris's characterization of section 5121 as a "minor statute" that "established a limited exception to the Secretary's long-established processes." Appellant's Br. at 20. Section 5121 is not simply a graft of Federal legislation onto an area exclusively occupied by state law. In *Richard*, the Federal Circuit observed that the legislative history of section 5121 "broadly reflects a transition from express prohibitions of payments to veterans' estates to explicit allowance of payments to certain designated individuals." 161 F.3d at 723. The legislative materials the Federal Circuit relied on further demonstrate that Congress was aware that accrued benefits due and unpaid at the time of a VA claimant's or beneficiary's death might remain in Federal coffers if there are no eligible surviving family members and those who bore the expense of last sickness and burial have been reimbursed. *See, e.g.*, H.R. Rep. No. 78-463, at 14 (1943) ("Where there are no persons entitled to such benefits, within the classes thus enumerated, the regulation authorizes payment of such amount undue and unpaid at death as may be necessary to reimburse the person who bore the expense of . . . . last sickness as well as the expense of burial."); *accord* S. Rep. No. 78-403, at 11 (1943).

12

These authorities further show that, although Congress expressly revised the governing law so that an accrued benefits check not negotiated before an accrued benefits payee's death will be paid to the payee's estate in some cases, it did not likewise liberalize the law governing eligibility for accrued benefits. *See* H.R. Rep. No. 78-463, at 15 ("Cases have arisen wherein substantial justice would require that the amount of the [accrued benefits] check received but not negotiated by the payee during his [or her] lifetime be considered as an asset of his estate."). Current section 5122 of title 38 reflects this liberalization: An accrued benefits check received but not cashed prior to death may in some cases be negotiated by "the duly appointed representative of the payee's estate." 38 U.S.C. § 5122. However, even in such a case, Congress mandated that the estate will be paid only the amount, if any, not paid to those listed in section 5121. *See id.* Thus, the Court rejects Mr. Morris's contention that section 5121 must be read to accommodate state law.

Second, in section 5121, Congress issued an "unqualified directive" that accrued benefits may be paid only to certain categories of persons. *Ridgway*, 454 U.S. at 56. Subject to minor exceptions not relevant here, the statute qualifies accrued benefits as those "due and unpaid" "periodic monetary benefits" arising under all "laws administered by the Secretary to which an individual was entitled at death under existing ratings or decisions or those based on evidence in the file at the date of death." 38 U.S.C. § 5121(a); *see Nolan v. Nicholson*, 20 Vet.App. 340, 348 (2006) (explaining that "periodic monetary benefits" include retroactive awards of disability compensation benefits because "even though the actual payment of retroactive benefits is made in a one-time lump-sum payment . . . the benefits that the claimant had been entitled to receive during his or her lifetime would have been paid monthly"). The provision continues by stating that, upon application, these benefits "*shall . . . be paid as follows.*" 38 U.S.C. § 5121(a) (emphasis added). In the case of a VA claimant's or VA beneficiary's death, the statute further specifies not only the specific categories of persons eligible to receive accrued benefits but also which categories have priority and, in some cases, the manner in which benefits must be shared. 38 U.S.C. § 5121(a)(2). The language does not permit the addition of others who may be eligible by operation of state law.

To the extent that Mr. Morris attempts to harmonize section 5121 and state inheritance principles (Appellant's Br. at 21), he fails to acknowledge the importance of the clear language Congress used in section 5121. The fact that state law, in the absence of a surviving spouse, child,

13

or parent, would apportion the veteran's estate among heirs such as his brother, provides no basis for this Court to ignore the plain text of section 5121(a) and find that it does not conflict with state law. *See, e.g.*, *Cleland v. Nat'l Coll. of Bus.*, 435 U.S. 213, 221 n.9 (1978) ("[T]he fact that Congress' judgment may deprive some veterans of the opportunity to take full advantage of the benefits made available to veterans by Congress is not a sufficient basis for greater judicial oversight of that judgment.").

The Court is aware that section 5121(a)(2)'s definition of those eligible to receive accrued benefits due and unpaid means that in this case the benefits that were due and unpaid to the veteran will revert to Federal coffers. However, that is apparently the outcome that Congress intended. *See Richard*, 161 F.3d at 723. This Court cannot look to state law to reach a more equitable result. *See Boyer v. West*, 210 F.3d 1351, 1356 (Fed. Cir. 2000) (Courts "can only interpret the statutes that are enacted by the Congress. . . . [and] are simply powerless to amend any statutory provision sua sponte."); *Fritz v. Nicholson*, 20 Vet.App. 507, 511 (2006) (holding that this Court cannot mandate an award of benefits contrary to rules provided by Federal law); *see also Metro. Life Ins. Co. v. Christ*, 979 F.2d 575, 582 (7th Cir. 1992) ("Congress . . . has spoken with force and clarity in directing to whom insurance benefits are to be paid. Congress created no exceptions to its statutory scheme, and courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text." (internal quotation marks omitted)). Congress's clear and unqualified instructions in section 5121—regarding to whom and how VA accrued benefits that were due and unpaid to a VA beneficiary upon his or her death are to be paid—leave no room for the operation of state law.[7]

Finally, unlike the Supreme Court in *Rose*, *supra*, we see no way that section 5121 can be effectuated consistent with a state law that would entitle heirs, other than surviving spouses, children, and dependent parents, to collect VA accrued benefits that were due and unpaid at the time of the VA beneficiary's death. Congress provides benefits to veterans and to specified survivors, and these

---

[7] Mr. Morris states that "if Congress [had] intended to authorize the Secretary to keep payments not disbursed under [s]ection 5121, it would have used words that so stated." Appellant's Br. at 24. Given the foregoing discussion, the words Congress used in section 5121 state precisely that. As the Federal Circuit said in *Youngman*, "because [the veteran] died without any heirs in the categories qualifying under § 5121, his unpaid benefits died with him." 699 F.3d at 1304. Accordingly, we reject any argument Mr. Morris offers that is premised on the notion that Congress did not authorize the Secretary to retain accrued benefits in the absence of a section-5121-eligible claimant.

14

payments to veterans or survivors may be increased where there are specific dependent family members. *See Hunt*, *supra*; *see also* 38 U.S.C. §§ 101(4), 102, 1110, 1115, 1131, 1310 (permitting disability compensation for veterans, dependency and indemnity compensation for survivors, and additional dependent benefits based on certain qualifying relationships). One reason the Supreme Court in *Rose* found that Federal law did not preempt state law was because the state child support statute was meant to benefit the same class of persons as Federal veterans disability compensation statutes: dependent children. 481 U.S. at 631 ("Congress clearly intended veterans' disability benefits to be used, in part, for the support of veterans' dependents."). In contrast to *Rose*, Mr. Morris argues here that any state heir, such as a veteran's sibling, should inherit VA accrued benefits due and unpaid. However, a VA beneficiary such as a disabled veteran is not entitled to any additional benefit to support siblings, offspring outside the statutory definition of "child," or non-dependent parents. It is not possible to harmonize a Federal statute that *excludes* Mr. Morris, the brother of the deceased veteran, from the categories of persons entitled to VA accrued benefits with a state statute that would *include* Mr. Morris.

Taken together, the foregoing considerations convince us that the Georgia statute invoked by Mr. Morris "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" set forth in 38 U.S.C. § 5121. *Hines*, 312 U.S. at 67. As such, section 5121 preempts Georgia state inheritance law.

### 2. Mr. Morris's Other Arguments

In addition to his preemption argument, Mr. Morris contends that the VA regulation governing discontinuance of benefits based on a payee's death conflicts with 38 U.S.C. § 5112, the statute that specifies the effective date of discontinuance of benefits on the death of a VA payee. Section 5112 specifies that the effective date of a discontinuance "shall be the last day of the month before such . . . death occurs." 38 U.S.C. § 5112(b)(1). Thus, for a veteran receiving disability compensation, the right to continuing compensation ends when he or she dies. *Reeves v. Shinseki*, 682 F.3d 988, 993 n.3 (Fed. Cir. 2012). VA's implementing regulation states: "The effective date of reduction or discontinuance of *an award of* pension, compensation, or dependency and indemnity compensation for a payee or dependent will be the earliest of the dates stated in these paragraphs unless otherwise provided." 38 C.F.R. § 3.500 (2013). Paragraph (g)(1) provides that

15

discontinuance based on the death of a payee takes effect on the last day of the month before death. 38 C.F.R. § 3.500(g)(1).

Mr. Morris argues that the regulatory phrase "discontinuance of an *award of . . .* compensation" is "substantively different" than the statutory phrase "discontinuance of compensation" because the former "alters the intent of Congress from terminating the right to a *future* payment to terminating the entitlement to *any* payment upon a payee's death." Appellant's Br. at 9. Mr. Morris further argues that "[s]ection 5112 discontinues *only* future monthly payments as of the last day of the month before the payee's death." *Id.* Mr. Morris contends that, because the right to benefits awarded before the veteran's death are not terminated and because the veteran has a constitutionally protected property interest in those benefits, such benefits at the time of a veteran's death become part of his or her estate, distributed according to state law. Appellant's Br. at 14-16. For several reasons, these contentions are not persuasive.

This argument does not advance Mr. Morris's position, because he essentially admits that the benefits he is claiming are "due and unpaid" and thus fall under section 5121. He appears to believe that the presence of the regulatory phrase "award of compensation" changed the outcome in this case to his detriment. However, even if he is correct that section 5112 discontinues only "future" payments, and that the use of the word "award" in the regulation illegitimately extends VA's reach to benefits already awarded but not paid, he must still admit that he was not paid the approximately $75,000 at issue here and that it was due and unpaid at the time of the veteran's death. Thus, Mr. Morris's argument that the statute discontinues only "future" payments and that the regulation somehow interferes with the statute applying only to the discontinuance of "future" benefits—in that it allows VA to extend its reach to benefits already paid—is pointless. The benefits here were withheld from the veteran and unpaid at his death.

Moreover, it is unclear what Mr. Morris means by "future payments" when he asserts that section 5112 discontinues "*only future* payments as of the last day of the month before the payee's death." Appellant's Br. at 12. Under the present regime, a veteran's disability compensation will be discontinued prior to the veteran's death. Congress amended 38 U.S.C. § 3012, the predecessor to current 38 U.S.C. § 5112, in 1962 and mandated that disability compensation be discontinued effective the last of the month before a veteran's death. *See* Act of Oct. 15, 1962, Pub. L. No. 87-

16

825, § 2, 76 Stat. 948, 949 (amending 38 U.S.C. § 3012(c)). Prior to this amendment, the effective date of discontinuance of compensation by reason of death was fixed as "the date of death." 38 U.S.C. § 3012(c) (1958). Although disability compensation is discontinued before the date of a veteran's death, this is not because of an impermissibly broad regulation.

To support his argument that the use of the phrase "award of . . . compensation" in the implementing regulation impermissibly expanded the scope of section 5112, Mr. Morris relies on *Snyder v. Nicholson*, 489 F.3d 1213 (Fed. Cir. 2007). Appellant's Br. at 11. In *Snyder*, the Federal Circuit clarified the meaning of the phrase "total amount of any past-due benefits awarded on the basis of the claim," 38 U.S.C. § 5904(d)(1), when calculating attorney's fees for representation of an incarcerated veteran. Although the amount of monthly compensation *awarded* to an incarcerated veteran is the same as that awarded to veterans not incarcerated, the compensation *paid* is reduced to 10% of that paid to veterans not incarcerated. *Snyder*, 489 F.3d at 1214-16. When an attorney sought 20% of the incarcerated veteran's past-due benefits, VA informed him that attorney fees were calculated as a percentage of "post-withholding past-due benefits," which yielded attorney's fees far less than expected. *Id.* at 1215, 1217. The Federal Circuit held that VA's regulation misinterpreted section 5904(d)(1) because the statutory limitation on *payments* to an incarcerated veteran did not change the monthly compensation *awarded* on the basis of a veteran's claim, thus, VA had erred in calculating attorney's fees based on the reduced amount of monthly compensation. *Id.* at 1218. The Federal Circuit concluded: "[I]t must be the case that the VA regulations view the amount 'awarded' as distinct from the amount actually payable." *Id.* at 1219. Thus, *Snyder* explains that, in certain circumstances, the amount of compensation "awarded" may be different from the amount of compensation "actually payable." *Id.*

But it is not clear to the Court how *Snyder* supports Mr. Morris's argument that there is a substantive difference between section 5112 and § 3.500 that would entitle him to the due and unpaid benefits he seeks. Simply pointing to an instance where the Secretary misinterpreted a statutory use of the word "award" is not sufficient. *Snyder* does not change the fact that VA was withholding certain compensation benefits that were "due and unpaid" at the time of the veteran's death, that section 5121 allows only certain prescribed categories of persons to be paid those benefits after his death, and that Mr. Morris is not covered under any of those categories.

17

Mr. Morris's argument is further weakened, in the Court's view, by the fact that he urges an interpretation of § 3.500 unnecessarily at variance with section 5112. Although his reading of § 3.500 might be a plausible grammatical construction, we do not think the phrase "award of compensation" compels Mr. Morris's understanding of how § 3.500 operates. When a regulatory provision can be interpreted in a way that either harmonizes with the statute it implements or conflicts with that statute, courts should adopt the harmonious interpretation. *Anthony v. United States*, 520 F.3d 374, 380 (5th Cir. 2008) ("[C]ourts should not interpret an agency regulation to thwart the statutory mandate it was designed to implement."); *Progressive Corp. & Subsidiaries v. United States*, 970 F.2d 188, 192-93 (6th Cir. 1992) ("Wherever possible, courts should read regulations to be consistent with the statutes that authorize them, and a construction that thwarts the statute which the regulation implements is impermissible."). In addition to defects already explained, such as the fact that his argument does not advance his position, Mr. Morris's argument is weakened because, despite the use of "award," the regulation may be interpreted in a manner harmonious with the statute.

Finally, the Court rejects Mr. Morris's undeveloped assertion that the veteran's property interest in his VA disability compensation meant that VA accrued benefits due and unpaid at the time of the veteran's death became part of the veteran's estate, distributable according to state law. Appellant's Br. at 14-16. A veteran has a constitutionally protected property interest in entitlement to VA disability benefits. *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009). But "a protectable property interest" in VA disability benefits "extends only so far as the law creates it." *Singleton v. Shinseki*, 659 F.3d 1332, 1335 (Fed. Cir. 2011). State law governs the meaning of "property" and "interests in property" only "[i]n the absence of any controlling federal law." *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992). The Court has already explained that section 5121 is such a "controlling federal law," specifically delineating who is eligible to receive VA accrued benefits due and unpaid at the time of a payee's death. This limitation is a clear congressional mandate, not the result of an overbroad regulation. Thus, any property interest the veteran had in his VA benefits did not include the right to have VA accrued benefits due and unpaid at the time of his death paid to heirs by operation of state law.

### III. CONCLUSION

In sum, we hold that 38 U.S.C. 5121(a) conflicts with a state law that would operate to pass VA accrued benefits due and unpaid at the time of a payee's death to persons other than those specified in section 5121(a) and, therefore, section 5121(a) preempts the Georgia statute invoked by Mr. Morris.[8] Because Mr. Morris, except to the extent that he bore the expense of the veteran's last sickness and burial, is not among the persons that section 5121(a) permits to receive accrued benefits, the Court concludes that the Board properly denied his claim for entitlement to benefits due and payable at the time of the veteran's death.

Therefore, upon consideration of the foregoing, the February 27, 2012, Board decision is AFFIRMED.

LANCE, *Judge*, concurring in the result: Although I agree with my colleagues that the February 2012 Board decision should be affirmed and concur with its analysis in Part II.A, I cannot join the majority's analysis in Part II.B as to the interplay between section 5121 and state law, and so I am compelled to write separately.

The Federal Circuit has made clear that "a veteran's claim to disability compensation under chapter 11 of title 38 is terminated by his or her death, [and so] a veteran—and therefore a veteran's estate—cannot have a protected property interest [therein]." *Richard v. West*, 161 F.3d 719, 723 (Fed. Cir. 1998). In other words, state law is simply not implicated by an accrued benefits claim, as any inheritable property interest died with the veteran. Accrued benefits claims, although derivative of the veteran's claims, are distinct property interests, and the class of eligible accrued benefits recipients is limited by statute. "'[A] veteran's death limits the recipients, amounts, and processes of recovery of disability compensation to those provided in section 5121.'" *Youngman v. Shinseki*, 699 F.3d 1301, 1304 (Fed. Cir. 2012) (quoting *Richard*, 161 F.3d at 722). Indeed, the Federal Circuit has *explicitly* held that "[n]o payment can be made to the veteran's estate, or any heir other

---

[8] Because the Court concludes that any state statute purporting to pass VA accrued benefits due and unpaid at the time of a VA claimant's death to a claimant's heirs (such as Mr. Morris) conflicts with section 5121 and is, therefore, preempted, the Court need not analyze whether the Federal statute would also displace state law based on field preemption.

19

than as designated in § 5121(a)." *Id.* This Court is bound by the decisions of the Federal Circuit and can do nothing in the face of controlling precedent but apply it. *See Bethea v. Derwinski*, 2 Vet.App. 611, 613 (1992). As the majority recognized in Part II.A, "under settled precedent, Mr. Morris is not entitled to accrued benefits . . . [and] the Board properly denied his claim." *Ante* at 7. This holding ends the Court's inquiry, and the majority's remaining analysis in Part II.B is mere dictum.